J. S. HATCHER & COMPANY, APPELLEE, v. GOSPER COUNTY, APPELLANT.

FILED MARCH 13, 1914.   No. 18,276.

1. **Taxation: COUNTY ASSESSOR: ABOLITION OF OFFICE.** Where the voters of a county, in the manner provided in section 19, art. I, ch. 77, Comp. St. 1911, elect to abolish the office of county assessor, the then incumbent of the office continues in his office until the expiration of the term for which he had previously been elected, unless he shall die, resign or otherwise vacate such office prior to the expiration of such term, in which event the county clerk of the county, eo instante, becomes ex officio the county assessor.

2. ———: ———: ———: COUNTY BOARD OF EQUALIZATION. And the fact that such office is so abolished does not oust the county board and county clerk of their powers and jurisdiction as the county board of equalization.

3. ———: ASSESSMENT: APPEAL: PRESUMPTION. Where a taxpayer appeals from the action of the county board of equalization in fixing the value of his property for taxation, the presumption obtains that the board faithfully performed its official duties, and that in making the assessment it acted upon sufficient competent evidence to justify its action; and the burden is upon the appellant to plead and prove that the action of the board is erroneous.

4. ——: ——: Duty of Taxpayer. It is the duty of a taxpayer, when so requested by the assessor, or county board of equalization, to honestly and promptly furnish information as to the character and amount of personal property owned by him, and the true value of the same.

5. ——: ——: Dismissal of Appeal. And when, on appeal to the district court from the action of the county board of equalization in fixing the value of his property for taxation, it appears that, before action taken by the board in fixing such value, the appellant refused to produce his books, papers and records, or to give any information which would aid the board in arriving at the true value of his property, and whether or not it had been assessed elsewhere, his appeal should be dismissed.

Appeal from the district court for Gosper county: Ernest B. Perry, Judge. *Reversed with directions.*

*Grant G. Martin, Attorney General, George W. Ayres, Frank E. Edgerton* and *O. E. Bozarth,* for appellant.

*W. S. Morlan* and *John L. Rice, contra.*

Fawcett, J.

Plaintiff is a corporation with its principal office and place of business in the village of Elwood, in Gosper county. The nature of the business to be transacted by the corporation is: "Dealing in lumber, building material, hardware, coal, either as wholesale or retail merchants or both, grain, live stock, real estate, general merchandise, contracting, and any other business that may be desirable to connect therewith." Its capital stock is $100,000, fully paid. At the time the controversy arose, plaintiff had seven lumber yards, one of which was at Elwood. It kept its bank account in the city of McCook, but none of its branch yards was located in that city. At the general election in November, 1911, the question of abolishing the office of county assessor, under the provisions of section 19, art. I, ch. 77, Comp. St. 1911, was submitted to the voters of the county, and by an overwhelming vote the office was abolished. About two months later the incumbent of the office tendered his resignation in writing, and the same was accepted. The county commissioners went

through the form of appointing W. L. Reynolds, who was the then duly elected and acting county clerk of the county, as the successor to the county assessor who had just resigned. Thereafter Reynolds entered upon the performance of his duties as *ex officio* county assessor. In that capacity he met with the precinct assessors from time to time, instructed them in their duties, and made up all of the records pertaining to the office of county assessor. In relation to the assessment of plaintiff, Reynolds instructed the precinct assessor to assess it as a corporation. When the precinct assessor called upon plaintiff to assess it in accordance with the instructions from Reynolds, plaintiff refused to be assessed as a corporation, but made a return on the form provided for individuals, which appears in the record as exhibit A, and on which it was assessed $10,000. The precinct assessor took this schedule to Reynolds, and informed him that plaintiff refused to make any other or further schedule. Thereupon Reynolds notified Mr. Hatcher, manager of plaintiff, that he would not accept such schedule, and made an appointment to meet him the same evening and talk the matter over. They met as per appointment, and, being unable to agree as to how the assessment should be made, they agreed to leave the matter to the state board of equalization and abide by their instructions. The matter was submitted to the state board in a letter written by Mr. Reynolds, and an answer received favorable to the view taken by him. Reynolds submitted the letter to Mr. Hatcher, but the latter still refused to permit the corporation to be assessed as such. Thereupon Reynolds demanded that he be permitted to inspect the records, books and everything pertaining to the corporation, which was refused. The seven lumber yards were assessed separately in their several counties and precincts, the assessments, including the $10,000 assessed under exhibit A, aggregating $65,865. This amount deducted from plaintiff's paid up capital left an apparent valuation, not assessed anywhere, of $34,135. This sum Reynolds added to the $10,000, making the amount as-

95 Neb. 35

sessed by him against plaintiff $44,135. To this he added, as a penalty for the refusal of plaintiff to furnish the information called for as to the true value of its property, 50 per cent. of the $34,135. Plaintiff appealed to the county board of equalization.

Its complaint lodged with the board alleged that it had made out a schedule and listed, in the form and manner required by law, all of its personal property "in Elwood precinct, in said county," subject to taxation; that the assessor had assessed the same at $10,000; that afterwards the county clerk without authority and without notice, pretending to act as county assessor, rejected the schedule so made, and pretended to make a new and different assessment, in which he assessed the property of the company at $44,135, and added thereto a penalty of $17,065 for a claimed refusal on the part of the company to list its property; that "the said valuation of said property of said company, as assessed by said precinct assessor, was at its full value for assessment and taxation, and was in fact more than the real value as compared with the valuation and assessment of other property in said precinct for taxation. The said claimed assessment, so made by said county clerk, is inequitable, excessive and unjust, and is many times greater than the actual value of the property of said company in said precinct, and is and was without authority of law, and void. There was no failure or refusal on the part of said company to list and return all its taxable property in said precinct for taxation and assessment for said year, and the said claimed penalty was wrongfully, unjustly and illegally added by said county clerk, claiming to act as county assessor, or otherwise. The said J. S. Hatcher & Company, deeming itself aggrieved by said claimed assessment so made by said county clerk, so claiming and pretending to act as county assessor of said county, prays that said unjust, excessive and illegal assessment of said property may be equalized and reduced, and that its property in said precinct be assessed at its just and reasonable value; that said claimed penalty may be canceled and removed,

and for such other and further relief as equity and justice may require."

This is the case attempted to be made by plaintiff on its appeal to the board of equalization. It shows just what the county assessor was attempting to do, viz., to assess plaintiff's unassessed property, wherever situated, according to its actual reasonable value. It also shows that plaintiff was standing upon its theory that it was only required to list such of its property as was actually located "in Elwood precinct." The question of taxing the capital stock of plaintiff was in no manner raised by the county assessor, nor by plaintiff in its appeal to the board of equalization. On the hearing before the board plaintiff objected to the board's proceeding with the hearing, for the reason that the board was "not made up of the required members and persons as required by law; W. L. Reynolds, sitting on said board both as county assessor and county clerk of said county." The objection was overruled, and the hearing proceeded. The county assessor then offered in evidence the correspondence which had taken place between himself and the state board of equalization under his agreement with Mr. Hatcher, as above stated. With this correspondence before it to guide it in its deliberations, the board then called upon plaintiff to produce its books, papers and records, or to state the value of the capital stock, the amount of the capital stock over the tangible property in the several yards, the surplus, if any, belonging to the company, the value, if any, of real estate or tangible property over the assessed value, the real estate or other tangible property that plaintiff might own which had not been listed and deducted from the capital stock. The proceedings of the board show that plaintiff refused to produce its books and records, "and in every way refused to give aid or information concerning said corporation which would aid them (the members of the board of equalization) in arriving at the value of said capital stock, and, admitting that some of their capital stock was in the general treasury at McCook and loaned to the other yards, still refused to state the amount,

if more or less than $34,135 claimed by the county assessor." Thereupon the board set aside the 50 per cent. penalty added by Reynolds, and affirmed his action in otherwise increasing the assessment. From this action of the board plaintiff, appealed to the district court. On the hearing of the appeal, the district court reversed the action of the county board of equalization and reduced plaintiff's assessment to the amount shown in exhibit A. From this judgment, defendant appeals.

The grounds upon which plaintiff tries to justify the judgment of the district court, or, to speak more accurately, the grounds upon which it seeks to be relieved from the assessment made by the county clerk, acting *ex officio* as county assessor, and ratified by the county board of equalization, urged by counsel in his brief are three in number, which we will consider in the order in which they appear in the brief.

1. "The county clerk was without authority to make the claimed assessment." The argument in support of this point is that, notwithstanding the fact that the county at a general election in 1911 voted to abolish the office of county assessor, that office continued to exist until January 1913. Section 19, art. I, ch. 77, *supra*, provides that the county board of any county, upon presentation of a petition signed by at least ten per cent. of the electors of the county, secured in not less than two-fifths of the townships or precincts of the county, shall submit to the electors at the next general election the question of electing a county assessor, designates the form of the ballot, and further provides: "And if a majority of the votes cast shall be against the election of county assessors in said county, the office shall cease therein with the expiration of the time of the incumbent, and the duties of county assessor shall thereafter in said county devolve upon the county clerk, who shall receive from the county board such allowance for the additional duties as shall seem reasonable, until otherwise ordered by the voters at a new election held under the same requirements as herein provided." It is argued that the expression, "the office shall

cease therein with the expiration of the time of the incumbent," means at the expiration of the term for which the incumbent was elected.  We do not so construe the act.  What the act was clearly designed to obviate was the ousting of a county assessor from his office before the expiration of the term for which he was elected.  That the legislative intent was to continue the office during his incumbency, and not during the term for which he had been elected, if he did not continue to be the incumbent until the expiration of that term, is too apparent for serious disagreement.  If the legislature had meant to continue the office until the expiration of the term, instead of during the incumbency of the then incumbent, it would have been easy to have done so in apt language.  We therefore hold that, upon the resignation of the county assessor on January 3 following the election at which the electors decided to discontinue the office, the county clerk, *eo instante,* became *ex officio* the county assessor.  The action of the county board, therefore, in going through the form of electing him as successor to the county assessor who had resigned, was a meaningless form, as the board could not have elected any other person as such successor, had it desired so to do.

2.    "Without the five members provided for by statute, there was no board of equalization capable of legal action."    In his argument on this point counsel states: "The statute requires the board of equalization to be composed of five members."    In this counsel is in error.  Section 120, art. I, ch. 77, Comp. St. 1911 provides:  "The county board, the county assessor and county clerk shall constitute the county board of equalization, and the county clerk shall be the clerk of said board."    This does not constitute a requirement that the board of equalization shall consist of five members.    It simply provides that certain officials shall constitute the board.    Suppose the statute were to be amended so as to provide for five commissioners.    Then in counties having both a county clerk and a county assessor the board of equalization would consist of seven members.    The mere statement of the illus-

tration shows the fallacy of counsel's argument. The office of county assessor having been abolished, the board, in defendant county, would thereafter consist of but four members—the three commissioners and the county clerk. The fact that the county clerk was also *ex officio* county assessor would not give him two votes on the board, so that the only change made was that there was one less offcial on the board. We therefore hold that the county board of equalization was lawfully constituted and had full power to act in the premises. The rule announced in the authorities cited by counsel that, "if only two of a board of three qualify and act, there is no board and the action is void," does not apply.

3. "The capital stock of an ordinary mercantile corporation is not assessable against the company." It is strenuously contended by counsel in his brief that the capital stock of plaintiff could not be assessed to it as a corporation, for the reason that such action is not authorized by statute. We think this contention is entirely "beside the mark." While there is some language in the proceedings of the board which, standing alone, might indicate that the board assessed the capital stock of plaintiff, as such, an examination of the entire proceedings shows that what the board actually did was to decide the appeal taken by plaintiff from the action of the county assessor, and determine the complaint of the plaintiff that the county assessor had taxed its property at an unjust, inequitable and excessive valuation.

Section 10927, Ann. St. 1911, provides that the personal property of corporations shall be listed by the president or proper agent or officer thereof. Except as otherwise provided, such property is required to be listed and taxed in the county, precinct, township, city or village, and school district where the principal office or place of business of such corporation is located within this state. Section 10949 provides: "The schedule shall be in such form as the state board of equalization and assessment shall from time to time provide." A schedule in this form was delivered to plaintiff, by direction of the *ex*

*officio* county assessor, with the request that plaintiff make its return thereon. This plaintiff refused to do. It also refused to give the assessor access to its books and papers, or to furnish any information which would aid him in determining what property of plaintiff had not been assessed anywhere and the true value of the same, so that assessment could be made as required by law. It also refused to furnish this information to the county board of equalization, to which it appealed. It in like manner failed to make proof thereof on the trial in the district court. It will be seen from this that its appeals from the assessor to the board of equalization and from the board of equalization to the district court were both without merit. The taxing authorities were not seeking to assess plaintiff upon the basis of the nominal or face value of its capital stock, as contended by counsel. They were simply seeking, honestly and as faithful officials, to ascertain the true value of plaintiff's property, in order that it might be assessed. The government must live. It cannot live without its revenue. In collecting its taxes it is entitled to fair and frank treatment by every citizen. To permit a taxpayer to take advantage of our liberal laws in relation to appeals, to unfairly and vexatiously hinder and delay it in obtaining its revenue, is a serious detriment to the government, and contrary to every sound principle of public policy. It is, therefore, the duty of a taxpayer, when so requested by the assessor, or county board of equalization, to honestly and promptly furnish information as to the character and amount of his personal property and the true value of the same. He cannot refuse to furnish such information to the lawfully constituted taxing board, and then, after months of delay, occasioned by his probably unnecessary appeal to the court, challenge the correctness of the valuation fixed by the board, except, at most, on a clear showing of fraud practiced by the board. If the assessment made by the county assessor was excessive, as alleged, it was the result of plaintiff's own failure to aid the assessor in arriving at the true value. If the assessor had, while act-

ing, as he says in his return, according to the best infor-
mation in his possession, placed too high a valuation upon
the property of the plaintiff, the burden was upon the
plaintiff to establish that fact before the board of equali-
zation. This it failed to do. If it could have and had
done so, the presumption is that the board would promptly
have corrected the assessment. That is precisely what
boards of equalization are for. The presumption obtains
that a board of equalization faithfully performs its offi-
cial duties, and that in making an assessment it acts upon
sufficient competent evidence to justify its action; and,
where a taxpayer appeals from the action of the board
in fixing the value of his property for taxation, the burden
is upon him to show that the action of the board is
erroneous. *Western Union Telegraph Co. v. Dodge
County,* 80 Neb. 23.

For the reasons above stated, the judgment of the dis-
trict court is reversed and the cause remanded, with di·
rections to dismiss plaintiff's appeal.

REVERSED.

ROSE, J., not sitting.