titled *Boyd County v. State Board of Equalization and Assessment,* p. 896, *post,* 296 N. W. 152, and decided at the same sitting of the court. The cases were considered at the same time on oral argument in this court. Our decision is governed by the rules therein announced.

BOYD COUNTY V. STATE BOARD OF EQUALIZATION AND AS-
SESSMENT.
296 N. W. 152

FILED JANUARY 31, 1941. NO. 31074.

*W. L. Brennan,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Edwin Vail, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and YEAGER, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

This is a proceeding in error to review the action of the state board of equalization and assessment for the state of Nebraska, in the matter of the equalization of the assessment of 1940 of improved and unimproved farm land in Boyd county.

Mention is made by the attorney general in his brief that the writ of error issued by this court was in the form of a writ of certiorari. But as this was not insisted on in his brief nor in oral argument to this court, the decision will be on the merits of the case.

The record shows that the state board of equalization and assessment, hereinafter referred to as the state board, met on July 1, 1940, and adjourned to July 11, 1940; that a meeting of the state board was held in pursuance to said adjournment on July 11; that the abstracts of property assessed for taxation in the various counties of the state were before the state board at this adjourned meeting; that

these abstracts showed the assessment made for each class of property in the different counties; that the state board examined these abstracts; that, after examining these abstracts, it was determined by the state board that a just, equitable and legal assessment of real property in the state could not be made without increasing or decreasing the value thereof as returned by the various counties; that the tax commissioner was directed to notify the counties deemed to be overvalued or undervalued of a date of hearing; that notice was sent to such counties that the state board would meet in the hearing room of the governor's suite in the capitol building at Lincoln, Nebraska, for the purpose of considering the equalization of real estate valuation in the respective counties for the year 1940 with the valuation returned from other counties of the state; that this notice was directed to the chairman of the county board, the county clerk, and the county assessor of each county; that said notice is recited to have been mailed to each of said officers, and that a date of hearing was set at least five days following the mailing of the notice; that groups of different counties were directed to appear at different dates, and Boyd county was directed to appear at 10 a. m. on July 17, 1940; that each county was advised that the total assessed value of its lands and improvements, as shown by the abstract, was a certain definite amount, as compared to another definite amount as shown in the assessment for 1939; that on July 17, 1940, as well as on other dates, the state board met and that representatives from various counties were present; that on July 17, 1940, there were present from Boyd county the county assessor, county clerk, county attorney, and a taxpayer from Boyd county; that the county clerk of Boyd county presented to the state board a statement of land sales in Boyd county from April 1, 1939, to July 13, 1940; that Mr. Hugh Ashmore, on behalf of the Nebraska federation of county taxpayers leagues, made a statement before the board at one of the meetings.

The record does not show that any sworn testimony was taken, but it does not appear that any interested party pre-

sented testimony or evidence which was offered to be given under oath. The hearings appear to have been informal. Lists similar to the list of sales of real estate offered by Boyd county were offered on the part of other counties. The state board caused to be made a part of the record a part of a bulletin dated January 30, 1940, relating to the transfer of farm lands in 86 of the 93 counties of Nebraska, which had been sent out to all county assessors and county clerks.

It does not appear that any person was prevented from taking a stenographic report of any portion of the testimony or evidence which might be desired, nor from presenting for settlement and allowance a bill of exceptions as to any or all of the evidence.

The valuation of farm lands and improvements, as shown by the abstract of assessment returned by Boyd county for 1940, is $4,580,230, compared with the 1939 assessment of $5,632,660. This was a decrease of $1,052,430, or 18.68 *per centum*. The 1939 valuation is taken from the statement sent with the notice mentioned above.

The final valuation fixed by the state board for 1940 for farm lands and improvements in Boyd county is $4,956,740, or a decrease of 12 *per centum* from the 1939 valuation.

After consideration, the state board increased the valuation of farm lands and improvements returned by Boyd county in 1940 from $4,580,230 to $4,956,740, or an increase of .082204 *per centum*, and the county clerk of Boyd county was given notice of this final decision.

The substance of the county's complaint may be summarized as follows: That legal notice was not given to the county prior to the final order of the state board; that there was no legal finding of the necessity for such order; that there was no competent evidence before the state board to sustain the final order; that the final order of the state board was arbitrary and capricious, and without authority of law; that the county was not afforded an opportunity to produce evidence, nor to be heard, and that a full hearing was not had; that the final order in effect reassessed the land of Boyd county at more than its actual value, contrary

to the provisions of section 77-201, Comp. St. Supp. 1939.

As to the question of notice, the principal complaint of the county seems to be that the state board did not hold a preliminary meeting and determine the exact amount of increase or decrease necessary in the assessment of real estate in Boyd and other counties before it equalized the assessment of real estate throughout the state between the various counties, and because it did not give notice to the county of said exact amount of increase which was to be made in the assessment. Also it is claimed that five full days' notice was not given of the hearing; that the record does not show when the notice was mailed; that the notice does not show the county the purpose of the meeting; that the final notice of the increase in assessment was only sent to the county clerk.

The first notice, addressed to the county board, county clerk and county assessor of Boyd county from the office of the state tax commissioner at Lincoln, Nebraska, and signed by "Wm. H. Smith" as state tax commissioner and secretary of the state board of equalization and assessment, was as follows:

"Notice is hereby given that the State Board of Equalization and Assessment will meet at the hearing room of the Governor's suite, in the Capitol Building at Lincoln, Nebraska, at 10 o'clock a. m., Wednesday, July 17, 1940, for the purpose of considering the equalization of real estate valuations in your county for the year 1940, with the valuation returned in other counties of the state.

"Representatives of your county desiring to appear in support of the valuations returned, as shown on the abstract of assessment, will be given an opportunity of being heard at that time.

"The total assessed value of lands and improvements in your county, as shown by the abstract, is $4,580,230 in 1940, as compared to $5,632,660 in 1939.

"The total assessed value of lots and improvements in 1940 is _____ as compared to _____ in 1939.

"In the foregoing, figures are supplied only for the classi-

fication in which changes are anticipated by the State Board."

As the issues of this case are mainly determined on the construction of section 77-1004, Comp. St. 1929, as amended in 1933 (Laws 1933, ch. 129), a copy of a part of this section is set out:

"They (state board) shall proceed to examine the abstracts of * * * property assessed for taxation in the several counties of the state, * * * and shall equalize such assessment so as to make the same conform to law, and for that purpose they shall have the power to increase or decrease the assessed valuation of * * * any county or tax district, and such increase or decrease shall be made by a *per centum* * * *. The state board shall have the power, in equalizing assessments, to increase or decrease the assessed valuation of any class, classes or kinds of property, * * * in any county or tax district, whenever in their judgment it shall be necessary to make such assessment conform to law; and such increase or decrease, when made, shall be certified to the county clerk * * *. In the event it shall appear to the state board of equalization and assessment that a just, equitable and legal assessment of the * * * property in the state cannot be made without increasing or decreasing the valuation * * * as returned by any county, the board of equalization and assessment shall issue a notice to the counties which the board deems either undervalued or overvalued * * *, and shall set a date for hearing at least five days following the mailing of such notice. At such hearing legal representatives of the counties may appear and show cause why the valuation or valuations of * * * their county should not be increased or decreased by the state board, and after a full hearing, the state board shall enter its order and certify the same to the county clerks of the proper counties as hereinbefore set forth in this section. The notice provided for in this section shall be mailed to the county clerk, county assessor, and chairman of the county board."

This notice informed the county that a hearing would be

had and that it would be given opportunity at such meeting to show why its valuation of farm property should not be increased or decreased as might be found necessary to equalize the assessment of the different counties. The statute does not require more. It was not necessary for the state board in this notice to inform the county that the state board had previously determined to increase or decrease its assessment a certain *per centum.* That was a matter to be determined at the hearing. The notice was sufficient to inform the county that its assessment was questioned and that if the county desired it could defend the same at the hearing. There was an affirmative statement in the record that the date of the hearing was set at least five days following the mailing of the notice. The county appeared at the designated time by its legal representative, and took part in the proceedings on July 17, 1940, and no complaint seems to have been made at that time that the notice was defective, or not mailed in sufficient time. The county had actual notice of the meeting. Since the county had actual notice it was not prejudiced. *State v. State Board of Equalization and Assessment,* 123 Neb. 259, 242 N. W. 609. The cases cited by the county, where no notice was given nor opportunity to be heard, are not applicable to the instant case.

The final notice of the decision of the state board in increasing the assessment was certified to the county clerk of Boyd county. This complies with the statute.

The contention of the county that a full hearing was not had is not sustained. The state board had before it the abstracts of assessments of the various counties, statements made at the hearing, the document presented by the county, the document of the state tax commissioner sent out to the county as to the average real estate sales, and knowledge of the 1939 assessment, and other evidence. The statute above quoted does not require any particular kind nor standard of evidence. The method to be used is left to the discretion of the state board. 61 C. J. 752. No formal hearing is required. In addition to the evidence mentioned in the

record, the state board may take into consideration matters within the general knowledge of its members. *Hacker v. Howe,* 72 Neb. 385, 101 N. W. 255; 61 C. J. 755. The case of the *Northwestern Bell Telephone Co. v. State Board of Equalization and Assessment,* 119 Neb. 138, 227 N. W. 452, is cited. The question in this case was the effect when no notice was given and sufficient opportunity to be heard was lacking. This case held that notice was necessary. While it was mentioned in the opinion that witnesses were not called and testimony was not taken, the case does not hold the state board of equalization must call witnesses and take sworn testimony in order to conduct a full and proper hearing.

The statute does not require the state board to have a stenographer, nor to keep a complete and exact record of all its proceedings. Unless the statute so required, it was not necessary for the board to do so. In proceedings of county boards, city councils, county boards of equalization, and in some inferior courts, there is no such requirement. This does not prevent any interested party from having a reporter and making a bill of exceptions of the evidence, nor from presenting for settlement and allowance a bill of exceptions of all or any part of the evidence. The county in these proceedings might have taken such a record of the evidence if it desired, but it apparently had no such desire, and cannot now assign as error that the state board did not do so.

There is nothing in the record to show that the county was prohibited from introducing testimony nor prohibited in any way from presenting its objections to the board. A fair and full hearing was had by the state board. *Hacker v. Howe, supra.*

Section 77-201, Comp. St. Supp. 1939, provides that in determining the actual value of farm property there shall be taken into consideration the market value and other elements. In determining this actual value, the local authorities must comply with this statute. It is claimed that this statute was violated by the state board, because the

final order of the state board increasing the valuation of lands and improvements, as determined by the proper local authorities of the county, was made without any evidence that such lands and improvements were assessed by the local authorities at a value less than their actual value, and that, in the absence of such evidence, the state board was wholly without authority to increase the county's assessment.

This contention implies that the assessment of the county's local authorities imports verity, and that the burden is on the state board to show that the assessment by the county authorities as returned and shown by the abstract was not the actual value, before the state board could increase the assessment so returned and shown by the abstract, even for the purpose of equalization. The statute does not place such a burden on the state board when making equalization of the values of farm lands between the various counties. Under the law, it is the duty of the state board to equalize the different assessments of farm lands so as to make them conform to law. For that purpose the state board has power to increase or decrease the assessed valuations as shown by the abstracts returned, whenever it shall be necessary to make such assessments conform to law. In doing this the state board has not violated section 77-201, Comp. St. Supp. 1939.

The brief of the plaintiff in error is largely devoted to matters other than the reasonableness or merits of the action of the state board in raising the assessment. From an examination and study of the record, we believe the decision and final order of the state board of equalization is not arbitrary nor capricious, but is reasonable, and in accordance with the record and the law.

It is ordered that the petition in error be dismissed, and the decision and final order of the state board of equalization and assessment be, and hereby is,

AFFIRMED.