IN RE ASSESSMENT OF REAL ESTATE AND BUSINESS PROPERTY IN THE STATE OF NEBRASKA FOR 1953. COUNTY OF DOUGLAS, APPELLANT, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.

63 N. W. 2d 449

Filed March 12, 1954. No. 33479.

*Eugene F. Fitzgerald, Robert C. McGowan,* and *August Ross,* for appellant.

*Clarence S. Beck*, Attorney General, and *C. C. Sheldon*, for appellee.

*Edward A. Mullery* and *Robert K. Adams*, amici curiae.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The County of Douglas gave notice of its intention to obtain a review of the decision of the State Board of Equalization and Assessment with respect to the valuations of real and personal property in the county as provided for by section 77-510, R. R. S. 1943. In accordance therewith the county perfected appeal to this court. The State Board of Equalization and Assessment increased the valuations returned by the county board of equalization of Douglas County in the manner hereinafter shown.

For convenience, and unless otherwise required, we shall refer to the appellant county as the County and the State Board of Equalization and Assessment as the State Board.

Section 77-1514, R. R. S. 1943, provides in part: "The county assessor or county clerk where he is ex officio county assessor, not later than June 25 of each year, shall prepare an abstract of the assessment rolls of his county on blanks to be furnished by the State Tax Commissioner, showing the values as equalized and corrected by the county board of equalization, and forward it to the State Board of Equalization and Assessment on or before July 1."

The county abstract of assessment was forwarded to the State Board on July 27, 1953, and contained a showing of values as equalized and corrected by the county board of equalization, and the information as to the taxable property in the county as required by said section.

The State Board met on the first Monday in July as required by section 77-505, R. R. S. 1943, this date being

July 6, 1953, for the purpose of equalizing assessments on both real and personal property. At this meeting the State Board adopted a resolution to the effect that the State Board had examined and considered the abstracts of property assessed for taxation in the various counties of the state previously submitted to said board, together with other pertinent data and information submitted by the State Tax Commissioner. Based upon and in consideration of such abstracts, data, and information, together with other matters within the general knowledge of the members of said board, it appeared that a just, equitable, and legal assessment of property in the state could not be made without increasing or decreasing the valuations of property, or some classes or kinds thereof, as returned by the various counties. The State Board deemed that all counties were either undervalued or overvalued; that hearing should be held before said board at which the legal representatives of such counties should be given an opportunity to show cause why the valuations of property of their respective counties should not be increased or decreased; and that notice should be given each county of the time and place of hearing.

Pursuant to section 77-508, R. R. S. 1943, notice was mailed to the county clerk, county assessor, and chairman of the county board of Douglas County. This notice was to the effect that the State Board would meet in the Governor's hearing room in the State Capitol Building, Lincoln, Nebraska, on July 18, 1953, and the hearings would continue for the purpose of considering the equalization of the valuations of the counties notified. Douglas County was notified to have its representatives present on July 18, 1953, for such purpose.

The pertinent part of the notice to Douglas County was as follows: "Notice is hereby given that the State Board of Equalization and Assessment will meet at the Governor's Hearing Room, in the State Capitol Building, Lincoln, Nebraska, on the 18th day of July, 1953, for

the purpose of considering the equalization of valuations in your county for the year 1953.

"Representatives of your county may appear at the aforesaid time and place and such representatives will be given an opportunity at said meeting to show why the assessed valuations of any or all class, classes, or kinds of property, personal real or mixed, in your county, as shown by the 1953 abstract of assessment rolls heretofore submitted to this Board, should not be increased or decreased as may be found necessary to equalize the assessments of the various counties of the state in such a manner as to make such assessments conform to law." This notice was dated July 6, 1953, and signed by the secretary of the State Board.

On July 18, 1953, the State Board met as indicated in the above notice. The County was represented by the county assessor, a member of the Douglas County board of commissioners, a representative of the Tax Appraisal Board, and a representative of the Association of Omaha Taxpayers. We will make reference to the showing made by Douglas County later in the opinion in connection with the assignments of error raised by the County.

On July 27, 1953, the State Board met in the office of the State Tax Commissioner in the State Capitol Building at Lincoln, Nebraska, and proceeded to a further examination of the abstracts returned by each of the counties, including that of Douglas County which was received by the State Board on that date. Further consideration was given to the showings and presentations made by the various counties at the hearings previously held, and of other evidence and records. The State Board found, in order to make the assessments as returned by the individual counties conform to law, and in order to arrive at a just, equitable, and legal assessment of the real and personal property in the state, the following increases should be made in the assessed valuations as returned by Douglas County for 1953:

| Item or Class of Property | Actual Value Shown on 1953 Abstract | Actual Value as Adjusted by State Board | Assessed Value as Equalized by State Board | Percent of Incr. or Decr. |
|---|---|---|---|---|
| Lands & Improvements | $ 35,544,920 | $ 42,653,900 | $ 21,326,950 | Incr. 20% |
| Lots & Improvements | 545,507,455 | 807,351,030 | 403,675,515 | Incr. 48% |
| Business Schedules | 96,357,097 | 134,899,930 | 67,449,965 | Incr. 40% |
| Total Household Goods & Personal Equipment | 6,309,440 | 9,464,160 | 4,732,080 | Incr. 50% |

The County was notified of the increases made in the valuations shown by the county's abstract of assessment on July 28, 1953.

The County sets forth the following assignments of error. We will determine the same in this appeal in the order in which they appear. (1) That the order of the State Board directing Douglas County to show cause why its valuations should not be increased or decreased was insufficient for the following reasons, to wit: (a) That at the time said order was issued the State Board did not have before it the abstract of Douglas County valuations and it therefore could not know whether Douglas County valuations should be increased or decreased, and (b) said notice did not specify whether the valuations as shown by the county abstract of assessment should be increased or decreased. (2) That no full hearing as contemplated by section 77-509, R. R. S. 1943, and as required by due process of law was had. (3) That the action of the State Board in increasing the valuations of Douglas County was unreasonable, arbitrary, and capricious.

In determining this appeal, we may not substitute our judgment for that of the State Board. We review the record to determine if the State Board has complied with the requirements of the statutes in exercising the powers granted to it by legislative authority and, where the record is clear that it has, it is then our duty to hold its actions to be in accordance with law.

The following is pertinent, with respect to the notice about which the County complains. Section 77-508, R. R. S. 1943, provides: "In the event it shall appear to the State Board of Equalization and Assessment that a just, equitable and legal assessment of the real or personal property in the state cannot be made without increasing or decreasing the valuation of such real or personal property as returned by any county, the board shall issue a notice to the counties which the board deems either undervalued or overvalued, and shall set a date for hearing at least five days following the mailing of such notice. The notice shall be mailed to the county clerk, county assessor and chairman of the county board."

Section 77-509, R. R. S. 1943, provides: "At the hearing provided by section 77-508, the legal representatives of the counties may appear and show cause why the valuation or valuations of the real or personal property of their county should not be increased or decreased by the State Board of Equalization and Assessment, and, after a full hearing, the board shall enter its order and certify the same to the county clerks of the proper counties as set forth in section 77-506."

We believe the case of Boyd County v. State Board of Equalization & Assessment, 138 Neb. 896, 296 N. W. 152, is a complete answer to the County's assignment of error that the notice sent by the State Board as required by section 77-508, R. R. S. 1943, was indefinite for the reason that it did not specify whether the valuations shown by the County's abstract of assessment should be increased or decreased. In the cited case the sufficiency of the notice was directly in issue. The notice did not advise the county which it was deemed to be, overvalued or undervalued. The court, commenting on the essentials of the notice, stated: "This notice informed the county that a hearing would be had and that it would be given opportunity at such meeting to show why its valuation of farm property should not be increased or decreased as might be found necessary to

equalize the assessment of the different counties. The statute does not require more. * * * The notice was sufficient to inform the county that its assessment was questioned and that if the county desired it could defend the same at the hearing."

The County makes no assignment of error based upon the fact that the Douglas County abstract of assessment had not been received by the State Board at the time of issuing notice of hearing. However, the County mentions such fact in its brief.

We have heretofore set forth section 77-1514, R. R. S. 1943, as it applies to the preparation of the abstract of assessment roll, and the time it shall be forwarded to the State Board. We have also noted the date the abstract of assessment of Douglas County was received by the State Board.

The County also invokes section 77-511, R. R. S. 1943, to the effect that it was the duty of the State Board to adjourn, as indicated in said section, until such time as it had all the abstracts of assessment of the various counties before it. The statute contains no such requirement. The County's assignments of error in such respect as above noted cannot be sustained.

As to the County's assignment of error No. 2, the County asserts that section 77-509, R. R. S. 1943, previously set out, requires a full hearing before the State Board before it is privileged to enter an order increasing or decreasing the valuations of property in any county, and that the County was allotted only one-half hour, and was limited to two spokesmen.

In this connection, there appears a letter in the transcript which accompanied the notice sent to the County. This letter contained the following language: "Each county will be given an opportunity for a full hearing. However, in view of the unusual magnitude of the equalization process this year, it will be necessary that certain reasonable rules of procedure be followed in the hearings. In the interest of orderly procedure at

the hearing, it is requested that each county have not more than two general spokesmen. * * * Furthermore, in order to expedite the functioning of the State Board, in the event representatives of your county choose to appear at the hearing, it is requested that you prearrange your presentation to the Board so that each county will not require more than one-half hour in time. In this connection, we suggest the possibility that you might find it desirable to submit written material. Such material will receive due consideration by the Board, subject only to the requirement that all factual matters be verified under oath."

The County asserts that a full hearing is one in which ample opportunity is afforded to all parties to make, by evidence and argument, a showing fairly adequate to establish the propriety or impropriety, from the standpoint of justice and law, of the step asked to be taken. There is no hearing when the party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute the same. 12 Am. Jur., Constitutional Law, § 608, p. 303, is cited.

The County further asserts that the State Board made no presentation of evidence in its own behalf at the hearing, but instead listened to the presentation made by the County and later announced its decision. The State Board, if it had an opinion that the valuations of the County should be increased, should be required to present whatever evidence it might have in support of its position, in order that the County might test or refute or explain the same.

Before proceeding further with this assignment of error, it appears from the record that there were three representatives who spoke in behalf of the County at the hearing before the State Board; that they were not limited as to time; and in addition, that an exhibit was offered by the executive director of the Association of Omaha Taxpayers. It appears, in fact, that there were seven written exhibits which were received in evidence.

The County's contention that due process requires that the State Board, at the statutory hearing, namely the hearing of July 6, 1953, submit all the evidence upon which its final determination may be based, is not in accord with the previous decisions of this court, as is evidenced by the following:

In Boyd County v. State Board of Equalization & Assessment, *supra,* the court said: "The statute * * * does not require any particular kind nor standard of evidence. The method to be used is left to the discretion of the state board. 61 C. J. 752. No formal hearing is required. In addition to the evidence mentioned in the record, the state board may take into consideration matters within the general knowledge of its members. * * * The case of the Northwestern Bell Telephone Co. v. State Board of Equalization and Assessment, 119 Neb. 138, 227 N. W. 452, is cited. The question in this case was the effect when no notice was given and sufficient opportunity to be heard was lacking. This case held that notice was necessary. While it was mentioned in the opinion that witnesses were not called and testimony was not taken, the case does not hold the state board of equalization must call witnesses and take sworn testimony in order to conduct a full and proper hearing."

In the Northwestern Bell Telephone Company case above referred to, the action there involved was the increase of the assessment of particular property, as opposed to a general equalization of values as to counties.

In the case of Lancaster County v. Whedon, 76 Neb. 753, 108 N. W. 127, this court made it clear that on appeals from the actions of boards of equalization, the burden falls upon the party seeking to disturb the actions of the board. The court said: "When the jurisdiction of a quasi judicial tribunal is once established, its subsequent proceedings are presumed to be regular. And so the rule is that, where a taxpayer appeals to the district court from the action of the board of equalization in the matter of the assessment of property for taxation,

the burden is on the appellant to show that the decision of the board is erroneous."

The above-cited case involved the action of the Lancaster County board of equalization in making certain blanket increases in the valuation of property within an entire precinct. The appellant therein urged the court to set aside the increases on the grounds that the board had offered no evidence to support its action. The language above quoted discloses the State Board is not obligated to offer evidence. See, also, Hatcher & Co. v. Gosper County, 95 Neb. 543, 145 N. W. 993; Borgnis v. Falk Co., 147 Wis. 327, 133 N. W. 209, 37 L. R. A. N. S. 489.

In the case of Chicago, R. I. & P. Ry. Co. v. State, 112 Neb. 727, 200 N. W. 996, which involved an appeal from the action of the State Board of Equalization and Assessment in making an original assessment of certain railroad property, the court said: "The burden of proof is upon the company to establish its contention that the value of its property has been fixed by the board at an amount greater than its actual value, or that its assessed value has not been fairly and properly equalized when considered in connection with the assessment of all other property, so that this disparity and lack of uniformity result in an unjust and unfair assessment." See, also, State ex rel. Kappa Sigma Bldg. Assn. v. Bareis, 226 Wis. 229, 276 N. W. 317, 113 A. L. R. 985.

The following language in the case of Hacker v. Howe, 72 Neb. 385, 101 N. W. 255, is also pertinent: "An owner is not deprived of his property without due process of law by means of taxation, if he has an opportunity to question its validity or the amount of such tax or assessment at some stage of the proceedings, either before that amount is finally determined, or in subsequent proceedings for its collection." See, also, People v. Pitcher, 61 Colo. 149, 156 P. 812, Ann. Cas. 1918D 1185; County of Howard v. State Board of Equalization & Assessment, *post* p. 339, 63 N. W. 2d 441.

Just recently this court, in the case of Laflin v. State Board of Equalization & Assessment, 156 Neb. 427, 56 N. W. 2d 469, held invalid the action of the State Board where it affirmatively appeared on the face of the record that the board failed to comply with the statutory requirement of assessment at actual value and no attempt was made to approach equality between the counties. Such action was held to be arbitrary on the part of the State Board. The decision was not based upon any theory that the State Board was under a burden to offer evidence to sustain its determinations. No mention was made in the opinion of any duty on the part of the State Board to produce evidence upon which to support its actions, or of failure to do so being violative of constitutional due process requirements.

In the light of the above, as shown by the record and the authorities cited, we conclude the County's assignment of error cannot be sustained.

As to the assignment of error that the action of the State Board in increasing the valuations of Douglas County was unreasonable, arbitrary, and capricious, a résumé of the showing made by the County before the State Board is appropriate. In this respect, the record shows that a county commissioner stated that the County had a "special situation" and as a result "found it difficult to abide by the law." The chairman of the local Tax Appraisal Board ventured the opinion that selling price does not represent actual value; and that current prices should be deflated to the level of some previous base period in which actual value was more accurately reflected by price. A representative of the Association of Omaha Taxpayers stated that he had recommended to the county officials an increase in valuation of town lots and improvements over the 1952 assessment. The County did not follow the recommendation.

The only documentary material appearing in the record was submitted by the executive director of the Association of Omaha Taxpayers. In a prepared state-

ment he asserted that industrial-commercial property in Douglas County was assessed at 50 percent of actual value. To sustain this claim he selected just a few transactions out of more than 10,000 real estate conveyances in the county in 1952. In addition, he admitted the calculations based upon his examples did not represent the overall average. Also in addition he submitted a purported comparison of assessments of all the counties in the state, upon the basis of which he contended that Douglas County led all others in the state with a 45 percent increase in valuations over the period 1946-1952, as compared with a 31 percent average increase of all other counties during the same period. This comparison assumes that accurate equalization had been obtained in both the years 1946 and 1952. Other parts of this showing need not be set out or discussed. From an examination, the showing made by Douglas County to justify the valuations returned by its authorities falls short of showing that the valuations returned conform to the law.

It must be presumed that local equalization exists, and the State Board has no power to remedy any lack of local equalization. See Hacker v. Howe, *supra.*

There should be some adequate showing as to the relationship of actual value at the time of the 1953 assessment. See Laflin v. State Board of Equalization & Assessment, *supra.*

The evidence thus submitted is inadequate and insufficient to warrant the conclusion that the action of the State Board in the instant case was arbitrarily made.

As previously stated, and shown by the authorities herein cited, the burden rests upon the County to produce evidence from which it can be demonstrated that the valuations returned by the County conform to law, and upon the basis of which showing it can be made to appear that any determinations of the State Board to the contrary are arbitrary. That is the issue here, but

the County has failed to show that the State Board has acted in an arbitrary manner.

Section 77-510, R. R. S. 1943, which has reference to an appeal from a final decision of the State Board to this court with respect to the valuation of any real or personal property, provides that the State Board, upon demand, shall prepare and certify a transcript of its records and proceedings involved in such decision, and then specifies the conditions by which the same may be obtained. The transcript in this case meets the necessary legal requirements. Had the County desired, it could have produced evidence at the hearing and caused the same to be preserved for examination at this time, in the form of a bill of exceptions. No such duty rests upon the State Board. See Boyd County v. State Board of Equalization & Assessment, *supra*.

The statute does not require any particular method of procedure to be followed by the State Board in equalizing real, personal, or mixed property as the case may be, between the various counties. It may adopt any reasonable method for that purpose.

The State Board, in equalizing the valuation of property, as heretofore mentioned, as between the various counties, may act upon the abstracts of assessment returned by the various counties, the knowledge of its own members as to value, or any information satisfactory to it. The values placed upon property by county authorities are not final and binding upon the State Board. See Boyd County v. State Board of Equalization & Assessment, *supra*.

With reference to the foregoing, if on appeal from the State Board to this court it appears on the face of the record that the action of the State Board was arbitrarily made, then this court will so determine. See Laflin v. State Board of Equalization & Assessment, *supra*.

It is the function of the State Board of Equalization and Assessment to examine the assessment rolls of the various counties and, by the process of equalization,

raise or lower the valuations therein contained to conform to the requirement that taxable property shall be assessed at fifty percent of its actual value. See § 77-201, R. S. Supp., 1953.

Section 77-112, R. R. S. 1943, provides: " 'Actual value' shall mean value in the market in the ordinary course of trade."

On appeal from a final order of an administrative board, however, the review by the appellate court is ordinarily limited to questions of law and whether or not the evidence is sufficient to sustain the order. The sole question is whether such order was arbitrarily made. See Laflin v. State Board of Equalization & Assessment, *supra*.

From an examination and study of the record, we believe the decision and final order of the State Board of Equalization and Assessment is not arbitrary or capricious, but is in accordance with the record and the law. It is ordered that the decision and final order of the State Board of Equalization and Assessment be, and is hereby, affirmed.

AFFIRMED.