In re Assessment of Real Estate and Business Property in the State of Nebraska for 1953. County of Howard, appellant, v. State Board of Equalization and Assessment, appellee.

63 N. W. 2d 441

Filed March 12, 1954. No. 33481.

*Richard H. Haggart, C. Russell Mattson,* and *Donald R. Kanzler,* for appellant.

*Clarence S. Beck,* Attorney General, and *C. C. Sheldon,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The County of Howard gave notice of its intention to obtain a review of the decision of the State Board of Equalization and Assessment with respect to the valuations of real and personal property in the county as provided for by section 77-510, R. R. S. 1943. In accordance therewith the county perfected appeal to this court. The State Board of Equalization and Assessment increased the valuations returned by the county board of equalization of Howard County in the manner hereinafter shown.

For convenience, and unless otherwise required, we shall refer to the appellant county as the County, and the State Board of Equalization and Assessment as the State Board.

The county abstract of assessment for 1953 was forwarded to the State Board as provided for in section 77-1514, R. R. S. 1943, and contained a showing of values as equalized and corrected by the county board of equalization and the information as to the taxable property in the county as required by said section.

The State Board met on the first Monday in July as required by section 77-505, R. R. S. 1943, this date being July 6, 1953, for the purpose of equalizing assessments on both real and personal property. At this meeting the State Board adopted a resolution to the effect that the State Board had examined and considered the abstracts of property assessed for taxation in the various counties of the state previously submitted to said board, together with other pertinent data and information submitted by the State Tax Commissioner. Based upon and in consideration of such abstracts, data, and information, together with other matters within the general

knowledge of the members of said board, it appeared that a just, equitable, and legal assessment of property in the state could not be made without increasing or decreasing the valuations of property, or some classes or kinds thereof, as returned by the various counties. The board deemed that all counties were either undervalued or overvalued; that hearings should be held before said board at which the legal representatives of such counties should be given an opportunity to show cause why the valuations of property of their respective counties should not be increased or decreased; and that notice should be given each county of the time and place of hearing.

Pursuant to section 77-508, R. R. S. 1943, notice was mailed to the county clerk, county assessor, and chairman of the county board of Howard County. This notice was to the effect that the State Board would meet in the Governor's hearing room in the State Capitol Building, Lincoln, Nebraska, on July 15, 1953, and the hearings would continue for the purpose of considering the equalization of the valuations of the counties notified. Howard County was notified to have its representatives present on July 15, 1953, for such purpose.

The pertinent part of the notice to Howard County was as follows: "Notice is hereby given that the State Board of Equalization and Assessment will meet at the Governor's Hearing Room, in the State Capitol Building, Lincoln, Nebraska, on the 15th day of July, 1953, * * * for the purpose of considering the equalization of valuations in your county for the year 1953.

"Representatives of your county may appear at the aforesaid time and place and such representatives will be given an opportunity at said meeting to show why the assessed valuations of any or all class, classes or kinds of property, personal, real or mixed, in your county, as shown by the 1953 abstract of assessment rolls heretofore submitted to this Board, should not be increased or decreased as may be found necessary to

equalize the assessments of the various counties of the state in such a manner as to make such assessments conform to law." This notice was dated July 6, 1953, and signed by the secretary of the State Board.

On July 15, 1953, the State Board met as indicated in the above notice. The county clerk, county assessor, county attorney, and three county commissioners of Howard County appeared before the State Board. The following showing was made: "While farm real estate has been assessed at or near 50 per cent, there has been no classification for assessment purposes. Business inventories are reported to be especially well assessed. The major problem appears to be obtaining an equitable assessment of farm real estate." As to who made this statement to the State Board is not shown in the record.

On July 27, 1953, the State Board met in the office of the State Tax Commissioner in the State Capitol Building at Lincoln, Nebraska, and proceeded to a further examination of the abstracts returned by each of the counties, including that of Douglas County which had been received by the board on that date. Further consideration was given to the showings and presentations made by the various counties at the hearings previously held, and of other evidence and records. The State Board found that in order to make the assessments as returned by the individual counties conform to law, and in order to arrive at a just, equitable, and legal assessment of the real and personal property in the state, the following increases should be made in the assessed valuations as returned by Howard County for 1953. The State Board in no way disturbed the valuations of Howard County on lands and improvements.

| Item or Class of Property | Actual Value Shown on 1953 Abstract | Actual Value as Adjusted by State Board | Assessed Value as Equalized by State Board | Percent Incr. or Decr. |
|---|---|---|---|---|
| Lots & Improvements | $3,276,310 | $4,554,070 | $2,277,035 | Incr. 39% |
| Business Schedules | 913,610 | 1,187,690 | 593,845 | Incr. 30% |

| Total Household Goods and Personal Equipment | | | |
|---|---|---|---|
| 66,415 | 132,830 | 66,415 | Incr.100% |

The County sets forth several assignments of error, some of which are interrelated. For convenience and clarity we will take up the assignments of error deemed pertinent to a determination of this appeal in continuity.

The County contends the State Board failed to follow the law in the equalization of property for 1953 equalization and assessment, in that it failed to have before it the abstracts of real and personal property assessed for taxation of all counties of the state at its statutory meeting, and further failed to follow the law in such respect in that it notified various counties to appear before it to show cause why their valuations should not be increased or decreased, when the State Board itself did not know which it wanted shown, and could not know which it wanted shown, because it did not have before it the abstracts of all of the counties at its first meeting July 6, 1953.

In determining this appeal, we may not substitute our judgment for that of the State Board. We review the record to determine if the State Board has complied with the requirements of the statutes in exercising the powers granted to it by legislative authority and, where the record is clear that it has, it is then our duty to hold its actions to be in accordance with the law.

Section 77-1514, R. R. S. 1943, provides in part: "The county assessor or county clerk where he is ex officio county assessor, not later than June 25 of each year, shall prepare an abstract of the assessment rolls of his county on blanks to be furnished by the State Tax Commissioner, showing the values as equalized and corrected by the county board of equalization, and forward it to the State Board of Equalization and Assessment on or before July 1."

The County asserts that when the abstracts of assessment are forwarded to the State Board as required by

this section, the State Board is then in a position to have complete information at its disposal as to all of the abstracts in the state when it meets as required by section 77-505, R. R. S. 1943.

Section 77-506, R. R. S. 1943, provides that the State Board shall proceed to examine the abstracts of real and personal property assessed for taxation in the several counties of the state, and shall equalize such assessment so as to make the same conform to law. For that purpose it shall have the power to increase or decrease the assessed valuation of real or personal property of any county or tax district. Such increase or decrease shall be made by a percent, and the percent of increase or decrease when made shall be certified to the county clerk of the proper county.

Attention is directed to section 77-508, R. R. S. 1943, which provides that in the event it shall appear to the State Board that a just, equitable, and legal assessment of the real or personal property in the state cannot be made without increasing or decreasing the valuation of such real or personal property as returned by any county, the board shall issue a notice to the counties which the board deems either undervalued or overvalued, and shall set a date for hearing at least five days following the mailing of such notice.

Section 77-509, R. R. S. 1943, provides that at the hearing provided by section 77-508, R. R. S. 1943, the legal representatives of the counties may appear and show cause why the valuation or valuations of real or personal property of their county should not be increased or decreased by the State Board, and, after a full hearing, the board shall enter its order and certify the same to the county clerks of the proper counties as set forth in section 77-506, R. R. S. 1943.

The County contends that in considering the above sections of the statutes, the State Board did not have before it all of the abstracts of real and personal property assessed for taxation in the several counties of the state

at its meeting held on July 6, 1953, in accordance with section 77-505, R. R. S. 1943; that it did not receive the abstract containing such subject matter from Douglas County until July 27, 1953; and that under notice dated July 28, 1953, the County was informed of the increase applied to it. Therefore, since the State Board did not have all of the abstracts before it, it was not in a position to know whether a just, equitable, and legal assessment could be made in this state for 1953.

In support of this contention, the case of Hacker v. Howe, 72 Neb. 385, 101 N. W. 255, is cited as follows: "When the board has before it the abstracts of assessment of the different counties, such as are required to be formulated and furnished for its information under the law, it is in a position to proceed in the discharge of its duties pertaining to the equalization of assessments of the different counties, * * *." The County contends that the foregoing language in the cited case demonstrated that until the State Board has before it all of the abstracts from all of the counties in the state it is not in a position to proceed to the discharge of its duties as heretofore mentioned in connection with the sections of the statute cited. The language quoted in the cited case, as it appears with other language therein, constitutes nothing more than a discussion by the court concerning the type of evidence upon which the board may base its final decision as to increases and decreases in valuations. The matter of whether the board had received all of the abstracts before holding the hearings was not involved in the case. There is no language appearing therein that can be interpreted as requiring an examination of the abstracts of all of the counties, as opposed to the examination of only the abstract of the particular county being heard. The opinion does point out that the abstracts of assessment as returned by the various counties are proper subjects for consideration of the board, and that a final decision based upon such abstracts, with or without other knowledge or informa-

tion, is sufficient basis for final orders by the board increasing or decreasing property values. The language appearing in the opinion to the effect that the board is in a position to proceed in the discharge of its duties when it has before it the abstracts of assessment of the different counties, means nothing more than that the board is then in a position to make a final decision as to what increases or decreases in valuations are necessary, if any, to make equalization, and to enter its orders accordingly. The object of having the abstracts before the board is for the purpose of enabling the board to discern what percent of increases or decreases in the valuations of property in the various counties may be necessary to achieve equalization. There is no necessity for the board having before it all of the abstracts of assessment of the different counties until the time of making its final determination.

As we view sections 77-505 and 77-506, R. R. S. 1943, there is nothing in either section of the statutes making any requirement that the State Board have before it all of the abstracts of assessment of the various counties in the state either before convening its annual meeting or before the commencement of its hearings, nor do sections 77-508 and 77-509, R. R. S. 1943, make any such requirement.

The County refers to section 77-511, R. R. S. 1943, which provides that the State Board shall have power to adjourn from time to time until the equalization shall be completed, and contends that it was the duty of the State Board, under the circumstances here presented, to adjourn until such time as the abstracts of assessment of all of the counties were before the board. We are not in accord with this contention. Apparently the County was not sufficiently disturbed about this alleged injustice to make any appropriate objections or request continuance at the time of the hearing before the State Board.

Section 77-511, R. R. S. 1943, provides further that

the State Board is empowered to secure the abstract of assessment rolls where the county assessor fails to submit it. Section 77-1515, R. R. S. 1943, fixes the penalty for refusing or neglecting to do so. Clearly, the above statutes contain no requirement that the State Board adjourn until the assessment rolls of all of the various counties are before it.

Taking up the second part of the assignment of error being discussed, in the case of Boyd County v. State Board of Equalization & Assessment, 138 Neb. 896, 296 N. W. 152, the sufficiency of the notice was directly in issue. The notice did not advise the county which it was deemed to be, overvalued or undervalued. The court, commenting on the essentials of the notice, stated: "This notice informed the county that a hearing would be had and that it would be given opportunity at such meeting to show why its valuation of farm property should not be increased or decreased as might be found necessary to equalize the assessment of the different counties. The statute does not require more. * * * The notice was sufficient to inform the county that its assessment was questioned and that if the county desired it could defend the same at the hearing." We believe this case is a complete answer to the contention of the County with respect to the sufficiency of the notice, and the County's contention cannot be sustained.

The County assigns as error that the action of the State Board in increasing values in the county in the fashion in which it was done resulted in the property owners of the county bearing an unjust and unlawful burden in their share of state taxes. In this connection the County asserts the action of the State Board for 1953, as it ultimately affects the taxpayers of the County, and others in the state, is a deprivation of property without due process of law in violation of Article I, section 3, of the Constitution of Nebraska, which provides that no person shall be deprived of life, liberty, or property without due process of law.

It should be stated here that it is not the function of the State Board to deal with assessments of individuals either directly or as a board of review; that is the function of the county board of equalization. See, Scotts Bluff County v. State Board of Equalization & Assessment, 143 Neb. 837, 11 N. W. 2d 453; Laflin v. State Board of Equalization & Assessment, 156 Neb. 427, 56 N. W. 2d 469.

The question of due process with respect to individual taxpayers is not involved in the process of equalization between the counties as performed by the State Board. In Hacker v. Howe, *supra*, although this case did not involve an appeal from the State Board to this court, the following language appearing therein is pertinent to the instant case: "These are special officers and tribunals (persons and boards connected with the equalization of property for tax purposes) within themselves empowered to do and perform all acts necessary and essential in the accomplishment of the collection of the public revenues. Due process of law is observed if, in the different steps taken by the officers and tribunals created by statute, an opportunity is given to an individual taxpayer who may feel aggrieved to be heard with reference thereto, and power is given to redress such grievance as may be right and just. Personal notice is not always essential. Notice given by statute or by publication may be sufficient. An owner is not deprived of his property without due process of law if he has an opportunity to question its validity * * *."

The cited case pointed out that any taxpayer who deemed his property not fairly assessed with respect to other property in the county was privileged to resort to the county board of equalization for correction of such inequity. If the taxpayer failed to avail himself of such a remedy, then he had no ground for complaint of the subsequent action of the State Board in raising or lowering valuations of the county even though the result thereof might be the assessment of his individual

property on a basis in excess of actual value. See, also, People ex rel. Bracher v. Orvis, 301 Ill. 350, 133 N. E. 787, 24 A. L. R. 325; Kentucky Railroad Tax Cases, 115 U. S. 321, 6 S. Ct. 57, 29 L. Ed. 414. The latter two cases point to the proposition that there is an inherent distinction between boards of equalization and courts of law. Although the actions of the board of equalization are quasi judicial in character, due process is not involved in the same manner as is true with respect to proceedings in court. There are other cases from different jurisdictions too numerous to cite on the same point. The County's contention cannot be sustained.

The County contends that the only evidence available in this record is that contained in the transcript, wherein it appears that business inventories were reported to the State Board to be especially well assessed; that nothing appears to the contrary; and that this is true as to all classes of property except farm real estate, yet the State Board increased town lots and improvements, and household goods and personal equipment as heretofore shown.

The purpose of a statutory hearing is to afford the County an opportunity to offer evidence for the purpose of establishing that its returned valuations do in fact conform to law. The hearing is not for the purpose of affording the State Board an opportunity to demonstrate wherein the valuations returned by the county do not conform to the law. The County did not make any record in its hearing before the State Board. The statute does not require the State Board to have a stenographer, nor to keep a complete and exact record of all of its proceedings. Unless the statute so required, it was not necessary for the board to do so. This does not prevent any interested party from having a reporter and making a bill of exceptions of all or any part of the evidence. The County in these proceedings might have taken such a record of the evidence if it desired, but it apparently had no such desire, and cannot now as-

sign as error that the State Board did not do so. See Boyd County v. State Board of Equalization & Assessment, *supra.*

The record discloses that there is not the slightest indication of any evidence having been offered on behalf of the County as to the method or basis used by it in fixing valuations and the relationship of its valuations to actual value. In the event the County had offered evidence which tended to show that its valuations were fixed at actual value, this court would concern itself only with the matter of whether the adjustments ordered by the State Board were arbitrarily made. Insofar as evidence is concerned before the State Board, there is nothing upon which to predicate a finding that the action of the State Board was arbitrary.

While the case of Hatcher & Co. v. Gosper County, 95 Neb. 543, 145 N. W. 993, did not involve an appeal from the State Board to this court, the following language appearing in the opinion is pertinent to the instant case: "Where a taxpayer appeals from the action of the county board of equalization in fixing the value of his property for taxation, the presumption obtains that the board faithfully performed its official duties, and that in making the assessment it acted upon sufficient competent evidence to justify its action; and the burden is upon the appellant to plead and prove that the action of the board is erroneous."

In the case of Chicago, R. I. & P. Ry. Co. v. State, 112 Neb. 727, 200 N. W. 996, an appeal was taken from the action of the State Board in making an original assessment of certain railroad property. The Court said: "The burden of proof is upon the company to establish its contention that the value of its property has been fixed by the board at an amount greater than its actual value, or that its assessed value has not been fairly and properly equalized when considered in connection with the assessment of all other property, so that this disparity and lack of uniformity result in an unjust and

unfair assessment. * * * We cannot say the company has sustained the burden of proof that the assessment is so unjust and arbitrary that it ought to be set aside."

In the light of the decisions heretofore cited, the County's contention cannot be sustained.

On appeal from a final order of an administrative board, however, the review by the appellate court is ordinarily limited to questions of law and whether or not the evidence is sufficient to sustain the order. The sole question is whether such order was arbitrarily made. See Laflin v. State Board of Equalization & Assessment, *supra*.

The statute does not require any particular method of procedure to be followed by the State Board in equalizing the assessment of property, real, personal, or mixed. It may adopt any reasonable method for that purpose. In equalizing the valuation of property as between the various counties, the State Board may act on abstracts of assessments returned by the various counties, the knowledge of its own members as to value, or any other information satisfactory to it. See Boyd County v. State Board of Equalization & Assessment, *supra*.

With reference to the foregoing, if on appeal from the State Board to this court it appears on the face of the record that the action of the State Board was arbitrarily made, then this court will so determine. See Laflin v. State Board of Equalization & Assessment, *supra*.

It is the function of the State Board of Equalization and Assessment to examine the assessment rolls of the various counties and, by the process of equalization, raise or lower the valuations therein contained to conform to the requirement that taxable property shall be assessed at fifty percent of its actual value. See Laflin v. State Board of Equalization & Assessment, *supra*.

As provided for in section 77-112, R. R. S. 1943, "actual value" shall mean value in the market in the ordinary course of trade.

From an examination and study of the record, we believe the decision and final order of the State Board of Equalization and Assessment is not arbitrary or capricious, but is in accordance with the record and the law. It is ordered that the decision and final order of the State Board of Equalization and Assessment be, and is hereby, affirmed.

AFFIRMED.