LEWIS E. LAFLIN, APPELLANT, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.

56 N. W. 2d 469

Filed January 9, 1953. No. 33284.

*Chambers, Holland & Groth,* for appellant.

*Clarence S. Beck,* Attorney General, and *Clarence A. H. Meyer,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an appeal by a landowner in Johnson County from the action of the State Board of Equalization and Assessment in refusing to properly equalize the assessment of farm lands in the various counties of the state for the taxable year 1952.

The first question to be determined is the right of appellant, a landowner in Johnson County, to appeal and, if so, the nature and scope of the appeal which he may take. The answer lies in the meaning of section 77-510, R. R. S. 1943, which provides in part: "From any final decision of the State Board of Equalization and Assessment with respect to the valuation of any real or personal property, any person, county or municipality affected thereby may prosecute an appeal to the Supreme Court. * * * Notice of intention to obtain a review shall be filed within ten days from the date of the entry by the board, and when docketed said cause shall be given precedence by the Supreme Court over all civil cases."

In determining the meaning to be given the foregoing provision it is necessary that it be construed with other provisions dealing with the powers of the State Board

of Equalization and Assessment, which will hereafter be referred to as the Board. Section 77-506, R. R. S. 1943, states in part: "The State Board of Equalization and Assessment shall proceed to examine the abstracts of real and personal property assessed for taxation in the several counties of the state, including the railroads and pipe lines entirely within such county, and all other property, and shall equalize such assessment so as to make the same conform to law. For that purpose it shall have the power to increase or decrease the assessed valuation of real or personal property of any county or tax district." In section 77-507, R. R. S. 1943, the statute also states in part: "The State Board of Equalization and Assessment shall have the power, in equalizing assessments, to increase or decrease the assessed valuation of any class, classes or kinds of property, personal, real, or mixed in any county or tax district, whenever in their judgment it shall be necessary to make such assessment conform to law." It seems clear to us that these powers are such that an individual taxpayer assessed on "any class, classes or kinds of property, personal, real, or mixed in any county or tax district," is a person affected within the meaning of section 77-510, R. R. S. 1943, when the Board fails in its duty to raise or lower the valuations of property within the county in which his property is situated, as required by the act. The latter section, prior to December 1, 1944, the effective date of the 1943 Revised Statutes, provided only for a writ of error. The provision providing for an appeal instead of a writ of error has the effect of broadening the scope of the review, although it refers solely to a judicial review of the final orders of an administrative board. We may not substitute our judgment for that of the Board, but we may review the record to determine if the Board has complied with the requirements of the statute in exercising the powers granted to it by legislative authority and, where the record is clear that it has not, hold its action to be contrary to law and remand the

issue in controversy for the further consideration of the Board. State ex rel. Sorensen v. State Board of Equalization and Assessment, 123 Neb. 259, 242 N. W. 609.

The record discloses that 19 counties were notified to appear before a meeting of the Board to show cause why the assessments of lands and improvements in such counties should not be raised. Appearances were made also by Johnson County by its county attorney and one county commissioner, although no notice of an intended increase or decrease of assessments had been served upon such county. Appellant also appeared with legal counsel and protested the valuations and assessments made in Johnson County as being excessive and, in addition thereto, that such valuations and assessments were proportionately higher than those on like property in other counties, which had the effect of requiring the appellant to pay a disproportionate share of the state property tax. The Board disposed of the contentions of the representatives of Johnson County and the appellant by stating in part that "the Board decided to take no action towards reducing the assessed value of farm lands and improvements in Johnson County."

It is the contention of the Attorney General that action could not be taken towards reducing the assessed value of farm lands and improvements in Johnson County as no notice had been given. It is then urged that appellant's remedy is to mandamus the Board to give the required notice if a prima facie case can be made, and not by direct appeal to this court. With this we are not in accord. It was evidently the intention of the Legislature to afford relief to any person, county, or municipality by a direct appeal from a final order of the Board which denied relief to one who had made a showing requiring the affirmative action of the Board. We think appellant pursued the remedy which the Legislature authorized when statutory authority was granted to permit a direct appeal to this court. There being evidence in the record before the Board conclusively indicating that Johnson

County lands and improvements were valued higher than those of similar kind and class in other counties, the final order of the Board declining to take action with respect thereto constitutes a final disposition of the matter which so affects the appellant that a right to appeal accrued as provided by section 77-510, R. R. S. 1943. See Consolidated Credit Corporation v. Berger, 141 Neb. 598, 4 N. W. 2d 571.

The point is made that the Board had no jurisdiction over Johnson County and, consequently, it had no power to reduce valuations in that county. The statute does require that notice be given to a county before valuations are raised or decreased in such county. But the duty is upon the Board to give the notice when the facts show that the valuations in a county must be reduced or increased in order to comply with applicable statutes on the subject. Where the Board fails to give the notice when the facts show that one is required in order to secure a compliance with the provisions of the statute, the Board cannot give validity to an otherwise invalid order by the simple expedient of not giving notice to those entitled to it under the statute. In other words, it is the duty of the Board to equalize the valuation of property of the same kind and class as between the different counties of the state. The giving of notice to counties it deems undervalued or overvalued is merely an incident to the accomplishment of its primary duty and one of the necessary steps that must be taken in any case where an equalization of values for the purposes of assessment are necessary. A failure of the Board to act when it is required to act is not excused because the Board has failed to follow the steps which the statute has imposed as a condition precedent to a valid order.

The record of the proceedings held before the Board shows the following pertinent facts: The Board convened on July 24, 1952, and took under consideration the matter of the equalization of real property in the

state and particularly devoted its attention to the assessed valuations of farm lands and improvements. The final decision of the Board was that the value of farm lands and improvements in all counties whose 1952 assessed valuations per acre as shown by the abstracts filed by the respective counties were less than 50 percent of the 20-year average selling price per acre be raised to equal at least 50 percent of such average. Notice was thereupon given to 19 counties falling within this classification to show cause on July 30, 1952, pursuant to section 77-508, R. R. S. 1943, why such increases should not be made. On July 30, 1952, the Board again met and, after hearing representatives of some of the 19 counties cited, made the increases as to them, from which no appeal was taken. The Board then heard the objections of Johnson County and the appellant, and made the final order to which we have heretofore alluded.

It is clear that the yardstick used in determining the value of farm lands and improvements for the assessment of taxes in 1952 was a percentage ratio of the 1952 assessed value per acre, as shown by abstracts of real and personal property assessed for taxation in the several counties of the state, to the 20-year average sale price per acre from 1932 to 1951 inclusive. The determination of the 20-year average sale price was made from records of transfers of real estate in each county as reported to the Board pursuant to section 77-1320, R. R. S. 1943. The state Tax Commissioner stated that, in making the 20-year average, sales of all types of land were included during the 20-year period. He stated further that the low sales during the period of depressed real estate values in 1933 and 1934 were included as an offsetting influence to those occurring in the last three or four years which have been characterized by inflationary pressures. In computing the average, unrealistic sales were screened out. Sales, when the consideration was deemed too low because they were forced sales

or sales between members of families, were deemed to have been offset by lands commanding a premium such as where two owners of real estate desired a tract of land contiguous to each one's property. It is evident, of course, that as an average sale price of land transactions between a willing buyer and a willing seller without the intervention of unusual circumstances, leaves much to be desired as an average sale price of farm lands and improvements even if it was competent evidence of actual value.

The result of the statistical survey thus made resulted in a great variance in the different counties of the state. As we have heretofore stated, the value of farm lands and improvements in 19 counties was assessed in 1952 at less than 50 percent of the 20-year average selling price per acre. We shall deal with them hereafter at the assessed valuations placed upon them by the Board at the hearing held on July 30, 1952. The overall result was that the average percentage ratio of the assessed value per acre for 1952 was 69 percent of the average sale price per acre as determined by the formula adopted by the Board. As an example we find farm lands and improvements in Thayer, Knox, and Gosper Counties valued at the average rate of 69 percent under the Board's formula. By the same formula farm lands and improvements are assessed at 50 percent in Keya Paha County and 51 percent in Kimball and McPherson Counties; and by the same criterion the same class of property is assessed in Johnson County at 82 percent, in Adams County at 78 percent, and in Pierce County at 77 percent. These examples serve to demonstrate that under the formula devised by the Board itself no attempt was made to assess farm lands and improvements on a uniform basis. It is under such a record that this court is called upon to determine the merits of the appeal of the appellant, a landowner in Johnson County. Historically we take note of the fact that prior to the enactment of the revenue act of 1921 the basis of assess-

ment for tax purposes was 20 percent of actual value. After the passage of that act all property in this state, not expressly exempt, was subject to taxation and was to be valued and assessed at its actual value. § 77-201, R. R. S. 1943. Actual value was therein defined as "its value in the market in the ordinary course of trade." We have repeatedly stated in effect that farm lands for purposes of taxation, as provided by this statute, shall be valued and assessed at their actual value, their value in the market in the ordinary course of trade. Schulz v. Dixon County, 134 Neb. 549, 279 N. W. 179, 119 A. L. R. 1294; Homan v. Board of Equalization, 141 Neb. 400, 3 N. W. 2d 650; Swanson v. Board of Equalization, 142 Neb. 506, 6 N. W. 2d 777.

It is clear from an examination of the record before us that the Board failed in its duty to value farm lands and improvements on the basis of their actual value and to equalize between counties for the purpose of compelling compliance with controlling statutes on the subject. We cannot see where the 20-year average sale price of lands of similar kind or class in a county can have any evidentiary value in determining present market value. It seems to us that an attempt to offset present high or inflationary values by averaging in the low-market values of 1933 and 1934 is in direct opposition to the intent of the law. It is the duty of the Board to fix the value of farm lands and improvements at their actual value at the time they are appraised for assessment purposes. Any attempt to depart from this provision of the statute by averaging values during past periods of time which are too remote to have evidentiary force, constitutes a noncompliance with legislative direction and any relief from this requirement, if relief is required, must come from the Legislature. It will be observed that the revenue act of 1921 directed that property be valued for taxation purposes at its actual value instead of 20 percent thereof. It was also provided that maximum rates of levy were limited to 20 percent of

the amount at which they had been fixed theretofore. The maximum rates of levy are therefore determinable with definiteness. The failure of the taxing authorities to value for taxation purposes on the basis provided by statute has had the effect of materially reducing the amounts of taxes produced from the maximum limits imposed and has, undoubtedly, produced financial distress in some political subdivisions of the state. This result has been brought about by the failure of the taxing authorities to raise valuations as provided by the revenue act of 1921 while the decrease in maximum rates of levy, concurrently effective, have been given full force, they being solely a matter of mathematical calculation.

It is the function of the Board to see to it that all property is assessed at its actual value and that the failure of any of the various counties to comply with this requirement shall be corrected by the process of equalization between such counties. Boyd County v. State Board of Equalization and Assessment, 138 Neb. 896, 296 N. W. 152. The Board does not deal with assessments of individuals, either directly or as a board of review. That is the function of the county board of equalization. Scotts Bluff County v. State Board of Equalization and Assessment, 143 Neb. 837, 11 N. W. 2d 453. The right of appeal conferred upon a person affected, as provided by section 77-510, R. R. S. 1943, involves something more than the valuation placed upon the specific property of an individual taxpayer for the reason that the Board has no authority to deal with individual valuations and assessments. Consequently the appeal must extend to the validity of the final order or orders of the Board fixing the actual valuations of "any class, classes or kinds of property, personal, real, or mixed in any county or tax district."

The record shows on its face that the Board did not value farm lands and improvements for assessment in the various counties on the basis of the actual value, their value in the market in the ordinary course of trade.

This being so, the final orders of the Board are in violation of the positive directions of applicable statutes, and from which orders an appeal can be prosecuted by any person affected under section 77-510, R. R. S. 1943. We are of the opinion that appellant's appealable interest lies in the fact that the record shows that farm lands and improvements in the various counties of the state are not assessed at actual value as defined by the statute and that there has been no uniformity of assessment between the various counties of the state under the formula used by the Board even if such formula could be assumed to correctly represent the actual value of this class of property throughout the state. Under such circumstances the final order of the Board is not in compliance with law and must be deemed to be an arbitrary valuation of this class of property. Whether or not the valuations of Johnson County can be properly equalized and assessed without compensating corrections in the remaining counties·of the state is not for this court to determine. We cannot, on an appeal, sit as a super board of equalization and assessment. Our function is solely to determine the legality of the action of the Board and, after a finding of illegality, to vacate and set aside the action of the Board and leave to it the matter of entering an order meeting the requirements of the law. Chicago, R. I. & P. Ry. Co. v. State, 111 Neb. 362, 197 N. W. 114; State ex rel. Sorensen v. State Board of Equalization and Assessment, *supra*. We find from the record that valuations of farm property and improvements for purposes of taxation were not made on the basis of actual value as defined by the statute, and that there was a failure to equalize between Johnson County and the remaining counties of the state as shown by the undisputed facts in the record. We point out that the applicable statutes require that farm lands and improvements in Johnson County, as in all other counties, are required to be valued at actual value for taxation purposes. It is also required that the values of such class

of property should be equalized by raising or lowering valuations, as the case may be, so that all property of the class can be assessed at its actual value and thereby secure a valuation uniform and proportionate as to such class for taxation purposes as required by Article VIII, section 1, Constitution of Nebraska. Under the situation here found to exist, the Board is required to reconvene for the purpose of entering an order complying with applicable statutes on the subject as interpreted by this opinion. The action of the Board is hereby set aside and the cause remanded to the State Board of Equalization and Assessment for such further action as may be required by law.

REVERSED AND REMANDED.