IN RE VALUATION AND EQUALIZATION OF REAL AND PERSONAL PROPERTY IN THE STATE OF NEBRASKA FOR THE TAX YEAR 1978. JOHN W. DECAMP, APPELLANT, v. STATE BOARD OF EQUALIZATION AND ASSESSMENT OF THE STATE OF NEBRASKA, APPELLEE.

278 N. W. 2d 619

Filed May 8, 1979. No. 42280.

John W. DeCamp, pro se.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an appeal from a final order of the State Board of Equalization and Assessment (hereinafter "State Board") with regard to the equalization between counties of the valuation of real and personal property for the year 1978. The State Board issued an order on July 26, 1978, for various counties to show cause why the valuations of real property, railroad terminal property, and improvements on leased land reported on their 1978 abstracts of assessment should not be increased or decreased by a percentage, for purposes of intercounty equalization. Hearings were held after notice by the State Board on August 1, 2, and 3, 1978, for the purpose of taking evidence in regard to the July 26, 1978, order.

On August 7, 1978, the State Board entered an order raising or lowering the valuations in certain counties and leaving the remaining counties unchanged. On August 10, 1978, the appellant, pursuant to section 77-510, R. R. S. 1943, filed notice with the State Board of his intention to appeal the order of the State Board, and thereafter perfected this appeal.

We are faced initially with a determination of whether the appellant has standing in this court. The State asserts that he does not. Appellant, a member of the Nebraska Legislature, did not personally appear at the State Board hearings; however, he alleges by affidavit in this court that he is the owner of taxable real and personal property in several Nebraska counties and that he did appear before the State Board, "such appearance being in the form of a letter addressed to said State Board dated August 4, 1978."

Section 77-510, R. R. S. 1943, provides in part: "From any final decision of the State Board of Equalization and Assessment with respect to the valuation of any real or personal property, any person, county or municipality affected thereby may prosecute an appeal to the Supreme Court." We have held that a taxpayer in a county where property was not valued in accordance with the law was a "person affected" within the meaning of the statute. In making that determination, this court held: "It was evidently the intention of the Legislature to afford relief to any person, county, or municipality by a direct appeal from a final order of the Board which denied relief *to one who had made a showing* requiring the affirmative action of the Board." (Emphasis supplied.) Laflin v. State Board of Equalization and Assessment, 156 Neb. 427, 56 N. W. 2d 469.

The State points to the language in Laflin, emphasized above, and the fact that the appellant there

appeared personally as a critical difference between that case and the present one. Appellant contends that his letter of August 4, 1978, was sufficient to satisfy any appearance requirement. For whatever reason, the letter does not appear in the record of the proceedings of the State Board.

The State refers to the letter "purportedly sent" by the appellant and argues in its brief that: "There is no showing the letter was ever received by the Board of Equalization of the State of Nebraska nor in fact that it was not received after the order was entered." However, the State has at no time actually denied that it received the letter. Since the fact of receipt of the letter is peculiarly within the knowledge of the State Board, we deem it appropriate to construe the failure to deny as an admission of receipt. Put quite simply, the contention of the State that the appellant's letter is not in the record is no answer to his argument that it *should* be in the record.

It is not clear whether the State argues that any showing required by the statute and the Laflin case could never be made except by personal appearance at the hearing. To the extent that argument is made, it is rejected, for written statements are widely recognized in Nebraska in both judicial and legislative hearings as an appropriate substitute, under certain circumstances, for oral testimony. Indeed, the bill of exceptions prepared by the Secretary of the State Board in this case contains the telegrams sent by two counties unable to attend the hearings.

It is the rule of Laflin that there is a right of appeal from such issues as were properly brought before the State Board. Granting, for the reasons set out above, that the appellant could raise those issues by letter rather than personal appearance and that the letter was in fact received by the Board, we are faced with the question of whether that letter did

in fact properly raise issues entitling him to relief here. For two reasons, we think that it did not.

First, the letter was dated, and presumably sent, August 4, 1978. That is too late. The hearings on the proposed order were held on August 1, 2, and 3, 1978, following full notice to the counties. All testimony, whether oral or written, should have been presented at the time of the hearings.

Second, the letter of the appellant fell far short of a "showing requiring the affirmative action of the Board." It referred only to the valuation of personal property and made no mention of the many issues, now raised in appellant's brief, relating to intercounty equalization of real property. But even as to personal property, the letter was not one of a "person affected" by the State Board's action. The letter did not reveal to the Board, as did the testimony of the appellant in Laflin, that the appellant was the owner of property, either real or personal, nor was it written in a tone mandating an inference that the appellant desired it to be considered in that light. It appeared under the letterhead of the appellant's official legislative stationery. It cited case law and merely expressed the appellant's legal opinion that: "A final determination of your tentative proposal to equalize property assessment without further taking into consideration other properties of the same class will be considered a failure to act upon a clear and specific legal duty." A statement of legal opinion does not constitute a "showing requiring the affirmative action of the board" nor does eventual disagreement by the Board with that opinion make the appellant a party "affected" by the order. It is required that the party seeking relief be an aggrieved property owner. Our refusal to allow on appeal the addition of these critical matters by affidavit is not a mere technicality.

The power to equalize valuations is vested in the State Board. Art. IV, § 28, Constitution of Ne-

braska; § 77-501, R. R. S. 1943. Its actions are subject to review in this court, but only by appeal. § 77-510, R. R. S. 1943. Where the interest of the appellant was not presented to the State Board, the action in this court is more akin to one for declaratory judgment than an appeal. We are without power to "review," in this court, matters relating to equalization which have not already been presented to the State Board. Having failed to make a showing before the State Board requiring its affirmative action, the appellant lacks standing in this court. The appeal is therefore dismissed.

APPEAL DISMISSED.

CLINTON, J., concurring.

I agree the record in this case fails to establish the necessary factual basis to give the plaintiff standing to sue, i.e., it does not show he is a person adversely affected by the order appealed from, and therefore the court cannot reach the merits of the case. Nonetheless, for reasons which will become apparent, I think it may be useful for me to express my individual views with reference to the usefulness, or lack thereof, of opinions by this court where the issue relates to statewide equalization of property values for ad valorem tax purposes. The point I wish to make is that, in the final analysis, the problem of equalization of property values can be solved only on the political level and, at this point in the history of this recurring problem, the repetition by this court of oft-repeated principles serves no purpose for the principles have long been established and repeatedly stated. Further, on the purely pragmatic level, this court, for reasons which I hereafter outline, cannot effectively order the members of the State Board of Equalization to do anything. By the time any appeal reaches this court, it is too late to undo that which has been done or to do that which has not been done. If the egg is scrambled on August 15, it can't be unscrambled thereafter.

Appellant asks this court to vacate the equalization order entered by the State Board of Equalization establishing values for the year 1978 and to direct the Board to enter another order establishing values in all counties at market value so that taxes may be levied uniformly and proportionately upon all tangible property as mandated by Article VIII, section 1, of the Nebraska Constitution. The Legislature has from time to time, for the purpose of carrying out the constitutional requirement above mentioned, enacted numerous statutes designed to facilitate and implement the requirements of the Constitution. Among the methods provided is the requirement of scientific reappraisal of all real property in the state. §§ 77-1301.01 to 77-1301.16, R. R. S. 1943. Reappraisal reports are required to be delivered to the State Tax Commissioner on or before February 1 following the year in which made. § 77-1301.06, R. R. S. 1943.

The basis for the appellant's complaint lies in the following facts which he asserts and which I accept as true. Sixty-two of the counties of the state revalued their property as required by law. The remaining counties did not. Thereafter, because some counties had not revalued, a substantial number of counties that had complied with the reappraisal statute rolled back their valuations in order to achieve some sort of equalization with those counties that had not followed the statutes. The State Board of Equalization resolved the matter in the following fashion. They decreased the valuation of some of the 62 counties and increased the valuation of others of the 62 so as to achieve a purported equalization at 70 percent of value. As to those counties that had not revalued, the Board did nothing, believing the evidence insufficient to support any change.

Let me first deal with the pragmatic aspects of this case.

The timetable of assessment date, valuation, es-

tablishment of budgets of the various governmental subdivisions, levy of tax, lien date, and tax due dates are such that it is too late, both as a matter of law and as a practical matter, to afford the relief which the appellant requests. Assessed value is to be determined as of January 1. § 77-1301, R. R. S. 1943. Assessment rolls, schedules, and returns of the county assessor must be filed with the county clerk on or before April 1. § 77-1315, R. R. S. 1943. Thereafter, the county boards of equalization must perform their function of equalizing individual properties and classes of property within the county. § 77-1501 et seq., R. R. S. 1943. Abstracts of the assessment rolls must be forwarded to the State Board of Equalization before July 1. § 77-1514, R. R. S. 1943. The State Board of Equalization then performs its function of equalization between counties. § 77-506 et seq., R. R. S. 1943. The valuation by the county boards of equalization as equalized by the State Board of Equalization binds the subdivisions of government. § 77-1338, R. R. S. 1943. The equalization order by the State Board of Equalization must be made by August 15, section 77-509, R. R. S. 1943, and certified to the county clerks. On or before September 1, the county board makes the levy of tax for the current year. § 77-1601, R. R. S. 1943. Personal property taxes become due and payable November 1 and the first half becomes delinquent on December 1. Real estate taxes become due and payable December 31 and become liens upon the property on that date. The dates are somewhat different in charter cities but the problem is the same. Of course, long before these dates the budgets of governmental subdivisions have been set, their needs determined, and the levy made based upon the valuations determined before September 1.

When an appeal is made to this court from an order of the State Board of Equalization, we are required to give the case precedence over all civil

cases. That precedence, however, depends in a large measure upon accelerated action by the parties to the litigation. This particular case was not at issue in this court until January 17, 1979. By that time the rights of individual taxpayers were set in concrete.

It is evident from the timetables that if the equalization and taxing process is to function equitably and as it is supposed to, it must meet the timetables established by the statutes of this state. There is no way the whole process can be rolled back and new tax statements sent unless it occurs long before November 1. Additional taxes cannot be levied after they have been paid except in the single instance of omitted property. As a practical matter, there can be no wholesale revaluation or levy after September 1, simply because the statutes make no provision for it.

Let us now deal with the theoretical aspects, i.e., those of principles.

No new principles of law are involved in this case. We are not asked to interpret any applicable statute. The duties and powers of the State Board of Equalization are well defined by the Constitution, statutes, and prior decisions of this court. Anything we might say on the matter is something that has previously been said on numerous occasions.

This court has over the years answered a multitude of questions on appeals from the State Board of Equalization. The more recent cases began with Laflin v. State Board of Equalization and Assessment, 156 Neb. 427, 56 N. W. 2d 469, in the year 1953, and continued with great regularity through 1970, ending with County of Hooker v. State Board of Equalization & Assessment, 185 Neb. 772, 178 N. W. 2d 785. These two cases and all those in between enunciated the applicable principles. There is no reason to suppose, however, that these decisions ever bore any practical fruit by implementation.

The reasons, of course, are those already outlined. We have pointed out several times: "We cannot, on an appeal, sit as a super board of equalization and assessment. Our function is solely to determine the legality of the action of the Board and, after a finding of illegality, to vacate and set aside the action of the Board and leave to it the matter of entering an order meeting the requirements of the law." Laflin v. State Board of Equalization and Assessment, *supra*; Carpenter v. State Board of Equalization & Assessment, 178 Neb. 611, 134 N. W. 2d 272. Practically, of course, what this means is that when an order is vacated, the decision of this court is implemented, if at all, only in subsequent years.