IN RE VALUATION AND EQUALIZATION OF REAL AND
PERSONAL PROPERTY IN THE STATE OF NEBRASKA
FOR 1979.
GREAT WESTERN SUGAR COMPANY, APPELLANT, V. STATE
BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.

295 N. W. 2d 686

Filed July 15, 1980. No. 42920.

J. Murry Shaeffer, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

In this proceeding, Great Western Sugar Company, the owner of sugar beet processing plants in Scotts Bluff and Morrill Counties, Nebraska, has appealed from the action of the State Board of Equalization and Assessment in ordering the following percentage increases in valuations of various classes of real estate:

|  | Morrill County | Scotts Bluff County |
|---|---|---|
| Farmland |  |  |
| Irrigated | 23 | 23 |

| Dryland | 62 | 75 |
| Pasture | NA | NA |
| Meadow and range | 10 | 84 |
| All other property* | 38 | 84 |

(*This includes urban real property, rural improvements, suburban homesites, improvements on leased land, and commercial and industrial property.)

The basis of Great Western's complaint was that the State Board, by ordering a greater percentage increase in the valuations of nonagricultural property than in those of raw farmland, will cause the owners of the former class of property to pay a disproportionately higher share of local taxes than the latter. Its assignment of errors, although not as numerous, paralleled and overlapped those of *Box Butte County v. State Board of Equalization & Assessment, ante* p. 696, 295 N.W.2d 670 (1980), and its appeal is supported by the same record as *Box Butte County, supra.*

At the outset, however, we are met with one different issue, and that is the one of the standing of Great Western to maintain this appeal. Neb. Rev. Stat. § 77-510 (Reissue 1976) permits the appeal from a final decision of the State Board by "any person . . . affected thereby." In *Laflin v. State Board of Equalization and Assessment*, 156 Neb. 427, 430, 56 N.W.2d 469, 473 (1953), we said that "It was evidently the intention of the Legislature to afford relief to any person . . . from a final order of the Board which denied relief to one who had made a showing requiring the affirmative action of the Board." In *DeCamp v. State Board of Equalization and Assessment*, 203 Neb. 366, 370, 278 N.W.2d 619, 622 (1979), we denied standing to the plaintiff because the evidence which he had offered at the meeting of the State Board "fell far short of a 'showing requiring the affirmative action of the Board.' " Similarly, in this case, the representative of Great Western appeared after the hearing on this phase of the business of the State Board had been concluded, *but while the State*

*Board was still in session and before any formal order had been entered*, and was properly permitted to testify. However, the full import of his testimony and request for "affirmative relief" is contained in the following excerpt from his testimony:

For example, in Scotts Bluff County you're recommending an 84 percent increase. This is basically on the resale of urban residential property. It has nothing to do with the operations of a sugar beet refinery. Even though we are in a period of higher inflation, many properties, such as our own, through no fault of ours or the areas that they're located in are declining in value, rather than increasing in value. Some of these values I know a lot of places you could buy a lot of sugar refineries. There's five sitting idle in the state of Utah that I'm sure they would be very happy to sell. An across the board percentage type increase we feel would lead to inequality rather than equality.

On the surface, at least, it appears that the witness was complaining that his particular property had been valued too high with reference to other property within that class, considering the depressed condition of the sugar beet industry. If so, the only available relief would be to apply to the county board of assessment to lower the valuation of its particular property or to raise that of the others. That the State Board cannot do. "It should be stated here that it is not the function of the State Board to deal with assessments of individuals either directly or as a board of review; that is the function of the county board of equalization." *County of Howard v. State Board of Equalization & Assessment*, 158 Neb. 339, 349, 63 N.W.2d 441, 447 (1954).

If it is the position of Great Western that the use of an urban residential assessment/sales ratio to support a raise in valuation of its and others' business

and commercial property was improper, we pointed out in *Box Butte County, supra*, the high degree of correlation between the ratios of the two classes of property.

Great Western also argues that the action of the State Board has the effect of destroying the existing intracounty equalization. This argument was dealt with adversely to the appellant's position in *Box Butte County, supra*.

The order of the State Board of Equalization and Assessment in raising the valuations of the various classes of property in Scotts Bluff and Morrill Counties is affirmed.

AFFIRMED.