TRAILBLAZER PIPELINE COMPANY, APPELLANT, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.
NATURAL GAS PIPELINE COMPANY OF AMERICA, APPELLANT, V. STATE BOARD OF EQUALIZATION AND ASSESSMENT, APPELLEE.
442 N.W.2d 386

Filed July 14, 1989. Nos. 88-707, 88-708.

William R. Johnson, of Kennedy, Holland, DeLacy & Svoboda, and Bruce J. McWhirter, of Ross & Hardies, for appellants.

Robert M. Spire, Attorney General, and L. Jay Bartel for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

These two cases, although briefed separately, were consolidated for argument. Trailblazer Pipeline Company (Trailblazer) and Natural Gas Pipeline Company of America (NGPL) are both public service entities within the meaning of Neb. Rev. Stat. § 77-801 (Reissue 1986). They have each appealed from the order of the State Board of Equalization and Assessment (the Board) to equalize all centrally assessed property valued by the state through application of a statewide "aggregate level of assessment" determined by the Department of Revenue (the Department) to be 88.7 percent of actual value.

The assignments of error generally are that the Board incorrectly assessed their property at a higher level of valuation than other properties and, further, that the Board failed to equalize that portion of their correlated system value with the personal property of railroads and carline companies; i.e., none of the personal property of the railroads and carline companies was assessed, therefore neither should the personal property of these appellants be taxed. The last assignment of error relates to questions of state constitutional uniformity and proportionality and federal constitutional questions of equal protection.

With one exception relating to standing as to NGPL to be later noted, the issues in these appeals are identical to the issues in and are controlled by our opinion in *Northern Natural Gas Co. v. State Bd. of Equal., ante* p. 806, 443 N.W.2d 249 (1989).

Regarding the standing issue, Neb. Rev. Stat. § 77-510 (Cum. Supp. 1988) provides in part: "From any final decision of the State Board of Equalization and Assessment with respect to the valuation of any real or personal property, any person, county, or municipality affected thereby may prosecute an appeal to the Supreme Court."

The Board contends that NGPL, having failed to appear

before the Board at its August 2, 1988, hearing or to otherwise request action of the Board, lacks standing to bring an appeal.

In *Northern Natural Gas Co., supra,* attorneys for Enron Liquids Pipeline Company and Northern Natural Gas Company appeared before the August 2, 1988, meeting of the Board and participated fully in the hearings, examining and cross-examining witnesses, offering various exhibits and testimony, and addressing the Board in summation, generally objecting to the recommendation made by the Department to equalize centrally assessed property at 88.7 percent and to the failure of the Board to equalize public service entities with railroads and carline companies.

The 1988 public service entity values on a system basis and on a Nebraska portion basis for Enron, Trailblazer, and NGPL all were made a part of the record.

Attorney William R. Johnson appeared at the hearing, representing Trailblazer, and in the course of his participation cross-examined Dennis Donner, an employee of the Department, regarding the assessment of railroad and carline companies as the result of federal litigation referred to in *Northern Natural Gas Co., supra.* Also found in the record is an affidavit in reference to Trailblazer of William V. Collins, an employee of NGPL, concerning the activities of both Trailblazer and NGPL as to the nature of pipelines of both companies being personal property.

The August 12, 1988, "Notice of Public Service Company Valuation for Assessment Year 1988," which refers to the enclosure of an appraisal for Trailblazer and NGPL adjusted to an aggregate assessment sales ratio of 88.7 percent, and *inviting a protest to be filed* within 30 days, was mailed to a Mr. McKenna at 701 East 22nd Street, P.O. Box 1207, Lombard, IL 60148, and received separately on behalf of Trailblazer and NGPL. Found in the record is a "Notice of Appeal and Request for Transcript" filed by NGPL with the Board within 30 days of the Board's final decision.

A Nebraska property franchise report including a schedule of property and valuations was filed with the Department on behalf of Trailblazer. Included within Nebraska schedule VII of that report is the account title: "Trailblazer Pipeline Company

is a General Partnership among NGPL-Trailblazer, Inc., Columbia Gulf Transmission Company and Enron Trailblazer Pipeline Company. Subsidiaries of Natural Gas Pipeline Company of America, The Columbia Gas System, Inc. and Enron Corp., Inc., respectively."

Also part of the record includes "FERC Form No. 2: Annual Report of Major Natural Gas Companies." The identification sheet of that report, page 1, gives the Lombard, Illinois, address previously mentioned, and names as the contact person James T. Ashworth, vice president, accounting and control, Natural Gas Pipeline Company of America, operator.

On page 102 of the foregoing report is a schedule called Control Over Respondent. The respondent is named as Trailblazer Pipeline Company, with the accompanying statement that "[a]t December 31, 1987, Trailblazer was a partnership equally owned by NGPL-Trailblazer Inc., a wholly owned subsidiary of Natural Gas Pipeline Company of America (Natural), a wholly owned subsidiary of United Energy Resources, Inc. . . . ."

Trailblazer and the Department entered into a stipulation which recites that Trailblazer is a public service entity; that 96 percent of Trailblazer's system value consists of pipelines; and that the total value system-wide of Trailblazer's real and tangible personal property is $155,000,000, and the amount of that value apportioned to the State of Nebraska is $112,604,400.

A notice of the meeting of the Board set for 2 p.m., August 2, 1988, inviting all interested persons to appear, was published in newspapers in Lincoln, Grand Island, Norfolk, North Platte, and Scottsbluff.

The parties have not pointed out to the court, nor have we been able to find in the record, a property franchise report filed on behalf of NGPL, or anything in the way of a written or oral protest filed with the board by NGPL other than as its position as a partner of Trailblazer. There is nothing by way of a final order of the Board setting forth the valuations assigned to property belonging to NGPL, or for Enron or Trailblazer for that matter, other than the letter of August 12 previously mentioned, which simply states that NGPL's property will be

equalized by evaluating *all* property of centrally assessed taxpayers at 88.7 percent, the aggregated value of all property in the state, including that of centrally assessed taxpayers whose property is valued at 100 percent.

It is on the basis of this record that the Board claims that NGPL has no standing to bring this appeal. In spite of the provision of § 77-510, previously cited, which grants the right of appeal to the Supreme Court to any person who is affected by a decision of the Board, the Board cites two cases which it contends support its position: *Laflin v. State Board of Equalization and Assessment*, 156 Neb. 427, 56 N.W.2d 469 . (1953), and *DeCamp v. State Board of Equalization and Assessment*, 203 Neb. 366, 278 N.W.2d 619 (1979).

In *Laflin*, a landowner in Johnson County appealed from the action of the Board in refusing to properly equalize the assessment of farmlands in the various counties of the state for the tax year 1952. Nineteen counties had been notified to appear before a meeting of the Board to show cause why the assessments of land and improvements in such counties should not be raised. Although no notice of an intended increase or decrease of assessment had been served upon Johnson County, an appearance was made on the county's behalf at the Board's hearing by the county attorney and one county commissioner. In addition, Laflin appeared with legal counsel and protested the valuations and assessments made in Johnson County as being excessive and proportionately higher than those on like property in other counties, arguing that this had the effect of requiring him to pay a disproportionate share of the state property tax. The Board disposed of the contentions of the representatives of the county and of Laflin by stating that it " 'decided to take no action towards reducing the assessed value of farm lands and improvements in Johnson County.' " *Laflin, supra* at 430, 56 N.W.2d at 472-73.

In *Laflin*, the Attorney General argued before this court that the Board could take no action toward reducing the assessed value of farmlands and improvements in Johnson County, since no notice had been given. The Attorney General then contended that Laflin's remedy was not a direct appeal to this court but, rather, was to mandamus the Board to give the

required notice if a prima facie case could be made. This court disagreed, saying:

> It was evidently the intention of the Legislature to afford relief to any person, county, or municipality by a direct appeal from a final order of the Board which denied relief to one who had made a showing requiring the affirmative action of the Board. We think appellant pursued the remedy which the Legislature authorized when statutory authority was granted to permit a direct appeal to this court. There being evidence in the record before the Board conclusively indicating that Johnson County land and improvements were valued higher than those of similar kind and class in other counties, the final order of the Board declining to take action with respect thereto constitutes a final disposition of the matter which so affects the appellant that a right to appeal accrued as provided by section 77-510, R.R.S. 1943.

*Laflin, supra* at 430-31, 56 N.W.2d at 473.

Subsequent to *Laflin*, this court has focused on the language "one who had made a showing requiring the affirmative action of the Board" when addressing the right to appeal pursuant to § 77-510.

At issue in *DeCamp v. State Board of Equalization and Assessment, supra,* was the right to appeal pursuant to § 77-510. DeCamp appealed from a final order of the Board *regarding equalization among counties* of the valuation of real and personal property for the tax year 1978. The Board issued an order for various counties to show cause why the valuations of real property, railroad terminal property, and improvements on leased land reported on their 1978 abstracts of assessment should not be increased or decreased for purposes of intercounty equalization. On August 7, 1978, the Board entered an order raising or lowering the valuations in certain counties and leaving the remaining counties unchanged. DeCamp appealed pursuant to § 77-510.

Appellant did not personally appear at the Board hearings. He alleged by affidavit in this court that he was a property owner of taxable real and personal property in several Nebraska counties and that his appearance before the Board

was in the form of a letter. This court found that an appearance before the Board for the purpose of making "a showing requiring the affirmative action of the Board" could be accomplished through a letter.

The court noted that "[i]t is the rule of Laflin that there is a right of appeal from such issues as were properly brought before the State Board." *DeCamp v. State Board of Equalization and Assessment*, 203 Neb. 366, 369, 278 N.W.2d 619, 622 (1979). Therefore, the court had to determine whether or not appellant's letter did properly raise issues entitling him to relief in this court. The court found that it did not for two reasons. First, the letter was dated after the hearings were completed and therefore was too late. Second, appellant's letter "fell far short of a 'showing requiring the affirmative action of the Board.' " *Id*. at 370, 278 N.W.2d at 622. The letter referred only to the valuation of personal property and made no mention of issues raised on appeal relating to intercounty equalization of real property. The court found that even as to personal property, the letter was not one of a "person affected" by the Board's action. The letter did not reveal to the Board, as did the testimony in *Laflin*, that the appellant was the owner of property, either real or personal, nor was it written in a tone mandating an inference that the appellant desired to be considered in that light. It is required that the party seeking relief be an aggrieved property owner. The court refused to allow proof of this critical matter on appeal.

The record of the Board's August 2, 1988, hearing reveals that the reference to NGPL was made by Thomas J. Dame, the supervisor of the state and local tax department of Midcon Corporation, who stated: "Midcon Corp. is the holding company of Natural Gas Pipeline Company of America, which is the partner in the Trailblazer Pipeline Company, and Natural Gas Pipeline Company is the operator." The attorney for Trailblazer never stated that his arguments were to also apply to a request from NGPL for the same relief requested by Trailblazer, nor does it appear that NGPL submitted a written request for relief with the Board.

NGPL argues, however, that it does have standing to bring an appeal. According to NGPL, since it was valued and

assessed at the Board hearing, "under the express words of § 77-510, NGPL falls within the category of 'any person . . . affected' by the State Board's decision, and it therefore has standing to bring this appeal." Reply brief for appellant NGPL at 1.

Analyzing *Laflin v. State Board of Equalization and Assessment*, 156 Neb. 427, 56 N.W.2d 469 (1953), NGPL argues that when the court said, "It was evidently the intention of the Legislature to afford relief to any person, county, or municipality by a direct appeal from a final order of the Board which denied relief to one who had made a showing requiring the affirmative action of the Board," *id.* at 430, 56 N.W.2d at 473, the court was not determining whether Laflin was a "person affected." According to NGPL, the court was instead discussing whether Laflin's proper remedy was a direct appeal under § 77-510 or a mandamus action to require the Board to give notice of intent to reduce the assessed value of the class of land in question in Johnson County. Furthermore, according to NGPL's brief, "the Court was concerned in Laflin with whether the record before the State Board contained a basis for setting aside the Board's action, not with whether the particular taxpayer bringing the appeal is the one who personally created the record." Reply brief for appellant NGPL at 2.

NGPL contends that the question presented in its appeal is whether a taxpayer who did not appear personally or in writing before the Board, but who the Board's record shows to be an affected property owner, has standing to appeal an action of the Board and to rely on matters inserted into the record by others.

NGPL argues that nothing in the language of § 77-510 requires an affected person to protest or appear before the Board before appealing. According to NGPL, nothing in the statutory scheme governing the Board indicates any legislative intent that a protest or appearance be a prerequisite to appeal such as is the case in the statutory scheme for appeals from county boards of equalization.

As property of a public service entity, NGPL's property is valued and apportioned by the Tax Commissioner rather than by county assessors. Neb. Rev. Stat. § 77-802 (Cum. Supp. 1988). The Board examines the valuations of property which is

valued by the state and equalizes those valuations. Neb. Rev. Stat. § 77-505 (Cum. Supp. 1988). There is no provision for notice to be given to centrally assessed taxpayers that the Board intends to increase or decrease the valuation of their property. Nor is there any statutory provision for a public service entity to protest its valuation.

According to NGPL, it and other public service entities were not informed prior to the Board's meeting either of the determined level of their equalization or of the new methodology that would be employed to determine the equalization rate for centrally assessed taxpayers. NGPL argues in its brief:

> The clear language of the statute cannot be twisted to force all taxpayers to be required to appear and file an objection on the very first day of the announcement of a revolutionary methodology of equalization. Consequently, even if there were no other reason, NGPL's position is clearly distinguishable from Laflin and DeCamp because of the lack of due notice. It would fly in the face of due process required by both the Federal and Nebraska Constitutions to require that NGPL, as well as all other taxpayers, appear at the State Board hearing to object to an unknown equalization level that was determined by a previously unannounced methodology.

Reply brief for appellant NGPL at 6.

Acknowledging that there must be some record upon which this court can decide an appeal, NGPL argues that such a showing has been made on the record. Additionally, NGPL urges this court to find that a centrally assessed taxpayer which has filed the forms required under § 77-801 has by doing so made the affirmative showing required.

We agree with the position expressed by NGPL. Data were submitted which disclosed the 100 percent valuation of all of the property of NGPL. The Board gave NGPL no notice of what it intended to do with these figures, including the employment of an entirely new and different method of equalization. It was not like either *Laflin v. State Board of Equalization and Assessment,* 156 Neb. 427, 56 N.W.2d 469 (1953), or *DeCamp v. State Board of Equalization and Assessment,* 203 Neb. 366,

278 N.W.2d 619 (1979), in which determinations had been made by county boards of equalization, whose actions were being contested before the Board. When the Board sent out notices to both Trailblazer and NGPL that their properties were to be equalized on the basis of an 88.7 percent aggregate valuation and when it became apparent that these two companies were not to be given the "break" which was given to railroad and carline companies, the Board quite obviously recognized that substantial rights of these two companies had been challenged.

The two taxpayers were partners. There was evidence that they operated in similar manners. What affected one, affected the other. The letters of notice advised the two taxpayers that they could appeal the final decision of the Board by filing a protest within 30 days, and were sent to a common official at a common address. Such protests were filed by Trailblazer and NGPL within the prescribed time, and appeals to this court were timely filed.

We conclude that as to a centrally assessed public service entity taxpayer under the provisions of Neb. Rev. Stat. §§ 77-802 et seq. (Reissue 1986 & Cum. Supp. 1988), where, as here, the Board made a final decision with respect to the valuation of the property of such taxpayer (NGPL) and the record contains the information disclosing the basis for such decision and assessment and alleged error, the taxpayer being affected by such decision was entitled to prosecute an appeal to this court under the authority of § 77-510.

Having determined that both Trailblazer and NGPL have standing to prosecute this appeal, their rights are determined by the opinion of this court in *Northern Natural Gas Co. v. State Bd. of Equal., ante* p. 806, 443 N.W.2d 249 (1989). Accordingly, the order of the Board is reversed and the causes are remanded for further proceedings not inconsistent with this opinion and the opinion in *Northern Natural Gas Co., supra.*

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.